**In re Ronald L. HAMO, Debtor.**

**Ronald L. Hamo, Appellant.**

**v.**

**Richard A. Wilson, Trustee, Appellee.**

**BAP Nos. 98–8073, 98–8074.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Submitted March 30, 1999.

Decided May 24, 1999.

Thomas C. Pavlik, Rubenstein, Novak, Einbund & Pavlik, Cleveland, Ohio, on brief for Appellant.

Richard A. Wilson, Kent, Ohio, on brief for Appellee.

Before BROWN, STOSBERG, and WALDRON, Bankruptcy Appellate Panel Judges.

## OPINION

The bankruptcy court rendered two separate decisions in this case, and the Debtor appealed both. First, the bankruptcy court denied the Debtor's discharge, pursuant to 11 U.S.C. §§ 727(a)(2)(A) & (B) and (a)(4)(A), finding that he intentionally omitted information on his petition and made a false oath or account on the petition and other documents filed with the bankruptcy court. Second, the bankruptcy court determined that only $20,000 of the Debtor's $96,000 IRA was exempt under OHIO REV. CODE ANN. § 2329.66(A)(10)(c) as reasonably necessary for the support of the Debtor. For the reasons set forth below, the Panel **affirms** the bankruptcy court's decision on both matters.

## I. ISSUES ON APPEAL

There are two issues in this appeal. The first issue is whether the bankruptcy court's finding, that the Debtor was entitled to only a partial exemption in the amount of $20,000 of his IRA, as reasonably necessary for his support, is clearly erroneous. The second issue is whether the bankruptcy court's finding that the Debtor's conduct satisfied the requisite fraudulent intent for denial of his discharge pursuant to 11 U.S.C. § 727 is clearly erroneous.

## II. JURISDICTION AND STANDARD OF REVIEW

The Panel has jurisdiction over final orders of the bankruptcy courts of the Northern District of Ohio pursuant to 28 U.S.C. § 158(a)(1) and (c). The bankruptcy court's orders, denying the Debtor a discharge pursuant to §§ 727(a)(2)(A) and (B) and (a)(4)(A) and determining the amount of the Debtor's IRA that is exempt pursuant to OHIO REV. CODE ANN. § 2329.66(A)(10)(c), are final and appealable orders.

The bankruptcy court determined that the Debtor was entitled to exempt only $20,000 of the IRA and that he possessed the requisite intent to warrant denial of discharge. In reaching these conclusions, the bankruptcy court entered findings of fact which are reviewed under the clearly erroneous standard. FED. R. BANKR. P. 8013. *See U.S.Internal Revenue Service v. Mathews (In re Mathews)*, 209 B.R. 218 (6th Cir. BAP 1997). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *Id.* (*citing Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

The bankruptcy court's interpretation of Ohio's exemption statute is reviewed under the de novo standard as it involves a question of law. *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 857 (6th Cir. BAP 1997). Under the de novo standard, the BAP determines questions of law independent of the trial court's determination. *Id.*

## III. FACTS

Ronald L. Hamo (the "Debtor") filed bankruptcy on December 15, 1995. The case began as a joint Chapter 13 with his wife, who later deconsolidated her portion of the case. On May 30, 1996, the Debtor converted his case to Chapter 7 and claimed, as exempt, his IRA in the amount of $71,257.73. The Trustee filed an objection to the Debtor's exemption claim.

On June 1, 1998, the bankruptcy court conducted a trial to determine the extent to which the IRA funds were "reasonably necessary for the support of the person and any of the person's dependents" pursuant to OHIO REV. CODE ANN. § 2329.66(A)(10)(c). The value of the IRA had appreciated to $96,000 by the time of the hearing. The Debtor, age 54, underwent by-pass surgery in 1993 and has continued to suffer periodic heart attacks. His physician estimates that the by-pass will be effective for approximately seven years and testified that the Debtor's prognosis for the immediate future is "relatively good," though he may require additional invasive procedures. Additionally, since the massive heart attack in 1993, the Debtor has suffered from severe depression, and he is currently taking several medications. At the time of the heart attack in 1993, the Debtor owned and operated several restaurants and bars in Ohio and Florida; however, he has remained unemployed since 1993 and has no income of his own.

The Debtor has no dependents as his children are grown and self-supporting. Mrs. Hamo is and has been gainfully employed for several years at her current position. She has been able to fully support the Debtor in the past, and her income is adequate for her to continue to support the Debtor in the future.

The Debtor stated that he is unable to work at the present time, but other than contacting friends, he has not made an attempt to gain employment, and his physicians have not found him unable to work. He is not receiving, nor has he applied for, unemployment. Initially, he testified that he had been denied Social Security disability, but later at trial, he corrected his testimony to establish that he had never applied for Social Security. Nonetheless, he has not withdrawn any money from his pension funds. Because of the denial of his discharge, he is now saddled with $260,000 in unsecured debt; however, the Debtor himself has relatively no assets for his creditors to attach. The bankruptcy court fully analyzed factors applied by various bankruptcy courts in Ohio and found, based on the particular facts of this case, that the Debtor needed only $20,000 of the IRA to sustain his basic needs in the future. On appeal, the Debtor admitted that he may not need the entire $96,000, but argued that he needs more than $20,000.

The Trustee filed an adversary proceeding to deny the Debtor his discharge. The Debtor again testified with respect to his medical problems, including psychological problems stemming from depression, which he contends cause memory loss. A review of the trial transcript, however, establishes that with regard to some matters, he was able to articulate specific dates and particulars of events in detail, while often providing evasive answers to questions posed by the Trustee.

The Trustee proved conclusively at trial that the Debtor failed to disclose that he was president of a company called Freedom Properties, Inc. ("Freedom Properties"). The Debtor and his 30–year friend and lawyer, A. Richard Valore ("Valore"), formed Freedom Properties as a vehicle for the Debtor to repay Valore for money he had loaned the Debtor over many years, totaling approximately $75,000. Freedom Properties purchased nine real properties, which it then attempted to sell for profit, and the sale proceeds were used to pay down Valore's debt. The Debtor acted as the sole operator of Freedom Properties from its inception in 1989. The Debtor hired the contractors who rehabilitated the properties, arranged for the closings, signed the tax returns for the corporation from 1993 through 1996, and signed the sale documents on seven of the nine properties which were sold. One of the properties was sold within two days preceding the Debtor's bankruptcy, filed December 15, 1995. The remaining properties were sold after the filing. The Debtor was actively engaged in selling these properties for Freedom Properties, yet he failed to disclose that he was president of the corporation on his schedules. Moreover, the Debtor used the net sale proceeds from these sales to reduce Valore's debt by $38,000 after the filing. He also admitted granting Valore a mortgage on the residence (recorded on December 14, 1995, the day before the bankruptcy filing), but failing to disclose the mortgage in the schedules.

The Debtor also failed to list a $50,000 personal injury claim resulting from a car accident in 1993, which claim the Debtor filed in state court in 1995. Not until the Trustee presented evidence at trial that the lawsuit had been voluntarily dismissed pursuant to a settlement did the Debtor disclose the lawsuit in his third amended schedules and acknowledge that the case had been pending at the time of the bankruptcy filing.

The Debtor also failed to list a $62,304 judgment he and others obtained against Financial America, a company in which the Debtor had invested substantial money. The Debtor admitted his failure to list the judgment lien but attempted to justify the omission by claiming the judgment was worthless.

## IV. DISCUSSION

### A. The IRA Exemption.

Ohio has opted out of the federal exemptions, pursuant to 11 U.S.C. § 522(b). *Wi-*

*cheff v. Baumgart (In re Wicheff)*, 215 B.R. 839, 842 (6th Cir. BAP 1998). The Ohio statute provides debtors with an exemption in retirement benefits:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
>
> . . .
>
> (10)(c) . . . the person's right in the assets held in, or to receive any payment under, any individual retirement account, individual retirement annuity, or Keogh or "H.R. 10" plan that provides benefits by reason of illness, disability, death, or age, *to the extent reasonably necessary for the support of the person and any of the person's dependents.*

OHIO REV. CODE ANN. § 2329.66(A)(10)(c) (Anderson 1995) (emphasis added).

█ Under the Ohio retirement exemption statute, as applied by the bankruptcy courts, the standard for determining to what extent the pension benefits are reasonably necessary for the debtor's support is not whether he has sufficient funds to sustain his former lifestyle, but whether he has enough to sustain his present and future needs, taking into account any special needs of the particular debtor. *See, e.g., In re Parker*, 219 B.R. 972, 974–75 (Bankr. S.D.Ohio 1998); *In re Hoppes*, 202 B.R. 595, 598 (Bankr.N.D.Ohio 1996); *In re Baumgardner*, 160 B.R. 572, 573–74 (Bankr.S.D.Ohio 1993); and *In re Herzog*, 118 B.R. 529, 532 (Bankr.N.D.Ohio 1990). *See also Mid–America Fed. Sav. & Loan Assoc. v. Gateway Manor Congregate Apartments*, 94 Ohio App.3d 521, 641 N.E.2d 229 (Ct.1994) (state courts likewise agree on the application of the statute).

█ The burden is on the trustee to establish, by a preponderance of the evidence, that the exemption should be disallowed. *Hoppes*, 202 B.R. at 597; *Baumgardner*, 160 B.R. at 573. The trial court must analyze the facts and circumstances of each case. *Parker*, 219 B.R. at 974–75; *Herzog*, 118 B.R. at 532. Bankruptcy courts uniformly consider eleven factors in making the determination of the amount of the retirement funds necessary to sustain a debtor's needs:

1. The debtor's present and anticipated living expenses;

2. The debtor's present and anticipated income from all sources;

3. The age of the debtor;

4. The health of the debtor;

5. The debtor's ability to work and earn a living;

6. The debtor's job skills, training, and education;

7. The debtor's other assets;

8. Liquidity of other assets;

9. The debtor's ability to save for retirement;

10. Special needs of the debtor; and

11. The debtor's financial obligations (e.g., alimony or support).

*In re Parker*, 219 B.R. 972, 975 (Bankr. S.D.Ohio 1998). A bankruptcy court's analysis is not restricted to these factors, nor is a bankruptcy court required to specifically discuss each factor in every case. However, these factors are appropriate for a trial court's consideration in its analysis of the totality of facts and circumstances in each case.

█ In this particular case, the bankruptcy court accurately set forth this test and analyzed each of the eleven factors in accordance with the circumstances of the Debtor as presented through the evidence at trial. The bankruptcy court determined that the Debtor, age 54, suffers from a degenerative heart condition and depression. The Debtor has no dependents, as his two children are grown and his wife is self-supporting. The Debtor has been unemployed since 1994, but has not applied for public assistance or Social Security benefits and maintains that he is unable to find a job, although his efforts at obtaining employment have been minimal. The

Debtor, who attended college for several years, previously earned a living owning and managing bars and restaurants.

Mrs. Hamo has been able to fully support the Debtor, including all medical needs and insurance coverage, and no evidence was presented to indicate that the Debtor's future living expenses would substantially increase or that his wife would become unable to continue to pay his expenses. The Debtor has been able to subsist without withdrawing any money from the IRA, which is his only asset, other than a $150,000 life insurance policy with a cash surrender value of $8,000. Ms. Hamo owns all of the assets, including a $185,000 marital residence in which there is equity of approximately $37,000. She also owns stock worth $20,000 and has a pension valued at $46,000.

The Debtor's special needs include ongoing medical treatment, most of which is covered by insurance, and $400 per month in medication not covered by insurance. He has no secured debts, no unsecured priority debts, and $260,000 in unsecured, nonpriority debts resulting from the denial of his discharge. He has no assets for creditors to attempt to attach, except for the life insurance policy with an $8,000 cash surrender value and any portion of the IRA determined not to be entitled to an exemption pursuant to OHIO REV. CODE ANN. § 2329.66(A)(10)(c).

The bankruptcy court found that the bulk of the IRA was not necessary for the Debtor's present support as his basic needs have been continually met despite his unemployment. The Debtor's operation of Freedom Properties post-petition, when he demonstrated his ability to manage and effectuate the resale of real properties, buttresses the bankruptcy court's finding that the Debtor could obtain some employment. The bankruptcy court found $20,000 of the IRA exempt as reasonably necessary to sustain his basic needs in the future. While the bankruptcy court did not set forth in mathematical detail how it arrived at the figure of $20,000, the Panel

may infer the appropriate findings in this regard from the detail in which the bankruptcy court discussed the factors in its slip opinion. *See Dolph v. Pennsylvania Higher Educ. Assistance Agency (In re Dolph)*, 215 B.R. 832, 834 (6th Cir. BAP 1998)("Where facts which will support a judgment can be inferred from a [trial] court's other findings, an appellate court will deem that such inferences were drawn." (citation omitted)). The bankruptcy court's findings and conclusions are not clearly erroneous, and the record fully supports the bankruptcy court's order sustaining, in part, the Trustee's objection to the Debtor's claimed exemption in the IRA.

## B. *Denial of Discharge.*

On September 21, 1998, the bankruptcy court issued an opinion and entered a judgment denying the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(2)(A) and (B).

Section § 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A) (West 1998).

■ Under § 727(a)(4), the trustee has the burden of proving, by a preponderance of the evidence, that a debtor's omissions constitute an intent to hinder, delay, or defraud his creditors. *See Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir.1994) (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991)). A debtor's intent may be inferred from circumstantial evidence or from "the debtor's course of conduct." *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 159 (Bankr.N.D.Ohio 1998); *Fahey Banking Co. v. Parsell (In re Par-*

*sell)*, 172 B.R. 226, 231 (Bankr.N.D.Ohio 1994).

 "A party objecting to a debtor's discharge pursuant to § 727(a)(4)(A) must establish that, (1) the debtor made a statement while under oath, (2) the statement was false, (3) the statement related materially to the bankruptcy case, (4) the debtor knew the statement was false, and (5) the debtor made the statement with fraudulent intent." *Sowers*, 229 B.R. at 158. Statements in bankruptcy schedules are given under oath, and "a fact is material if it 'concerns discovery of assets, business dealings or [the] existence or disposition of property.'" *Id.* (citations omitted). "Knowledge may be shown by demonstrating that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information." *Id.* A false statement or omission that is made by mistake or inadvertence is not sufficient grounds upon which to base the denial of a discharge, but a knowingly false statement or omission made by the Debtor with reckless indifference to the truth will suffice as grounds for the denial of a Chapter 7 general discharge. *See In re Beauboef*, 966 F.2d 174, 178 (5th Cir.1992).

 The bankruptcy court concluded that the Debtor demonstrated a "continued pattern ... of making omissions and false statements in his bankruptcy schedules" and exhibited reckless indifference for the truth, notwithstanding any memory loss. The bankruptcy court based its decision on the following omissions from Debtor's schedules and amendments: the Debtor's position as president of Freedom Properties; his debt-reduction agreement with Valore; his $50,000 personal injury action, listed only in the third amended schedules as a pending claim; and the Debtor's $62,304 judgment lien against Financial America. The Debtor had knowledge of his involvement with Freedom Properties but asserted that he did not consider it an asset of the bankruptcy estate because he had no ownership interest in the company. He also knew that Financial America owed him money but explained that he thought the claim was worthless and did not know a judgment had been rendered. We agree that the "recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984). Moreover, Debtor's detailed account at trial of his accident refutes his assertion that he could not remember the personal injury claim until his third amended schedule. The bankruptcy court had the opportunity to observe the demeanor and credibility of the Debtor and Valore during their testimonies and did not credit the testimony that these were innocent oversights and instead concluded that the Debtor had been recklessly indifferent to the accuracy and completeness of his bankruptcy filings. Despite the Debtor's denial of the materiality of his omissions, they had a direct effect on the Trustee's and creditors' ability to discover assets and business dealings because the omissions left them with a significantly abridged view of the Debtor's income and assets.

> The very purpose of ... 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction ... Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.
>
> . . . .
>
> A discharge is a privilege and not a right and therefore the strict requirement of accuracy is a small quid pro quo. The

successful functioning of the bankruptcy code hinges upon the bankrupt's veracity and his willingness to make a full disclosure.

*Hillis v. Martin, Martin v. Martin (In re Martin)*, 124 B.R. 542, 545, 547–48 (Bankr. N.D.Ind.1991) (quoting *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987) and *In re Krich*, 97 B.R. 919, 924 (Bankr.N.D.Ill. 1988)). Where the trier of fact is faced with evidence supporting more than one reasonable inference, the choice among them cannot be clearly erroneous. *See Sicherman v. Diamoncut, Inc. (In re Sol Bergman Estate Jewelers, Inc.)*, 225 B.R. 896, 904 (6th Cir. BAP 1998). Accordingly, in light of the nature and extent of the omissions, the bankruptcy court did not err in concluding the Debtor made material omissions and inaccuracies with a reckless indifference to the truth, which amounted to knowing and fraudulent false oaths or accounts and warranted a denial of discharge pursuant to § 727(a)(4)(A). *See, e.g., Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 483 (E.D.Va.1997) (affirming a denial of discharge under § 727(a)(4)(A) where the bankruptcy court found the debtors' credibility lacking and rejected their "protestations of innocent naivete ... in favor of a darker story of fraud and willful misconduct.").

Appellate review of the bankruptcy court's decision under § 727(a)(2)(A) and (B) is unnecessary because § 727(a)(4)(A) provides an independent basis for denying the Debtor's discharge. *See Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1452 (11th Cir.1994). Accordingly, we affirm the bankruptcy court's decision under § 727(a)(4)(A) and do not address the court's decision regarding § 727(a)(2)(A) and (B).

## V. CONCLUSION

We **AFFIRM** the order of the bankruptcy court denying the Debtor's discharge and the order of the bankruptcy court allowing the Debtor a partial exemption in his IRA in the amount of $20,000.