In the Matter of Andrew PATTISON
and Hope Pattison.

Judith Hinman, Appellant,

v.

Andrew Pattison and Hope
Pattison, Appellees,

Adversary No. 01–3053.
Chapter 7 No. 01–30569.
Civil Action No. 02–73656.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 30, 2003.

Francis A. Krcmarik, Flint, MI, for plaintiff.

John L. Topping, Jr., It's The Law Legal Services, P.C., Flint, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, Chief Judge.

### I.

Before the court is an appeal from a final judgment of the United States Bank-

ruptcy Court, Eastern District of Michigan, concerning Andrew and Hope Pattison's ("the Pattisons") successful Chapter 7 petition for discharge of debt. This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1). Upon review of the pleadings filed, the court has determined that the matter can be decided without oral argument.

## II.

Appellant, Judith Hinman ("Hinman") owns a small antique and country decorating business. Hinman became acquainted with the Pattisons through Andrew Pattison's practice of purchasing antiques for resale to dealers. Hinman subsequently loaned the Pattisons money, in the form of cash, withdrawals from her personal savings account, and several cash advances on her credit cards. The Pattisons used the loans to start a new business venture and to assist with their payments of various household obligations. The Pattisons did make some payments on the loans, including direct payments to Hinman's credit cards to reduce the balances that had accrued from the cash advances. Eventually, however, the Pattisons stopped making payments and never repaid the loans in full. Hinman secured a judgment in the Michigan state courts for the balance of the loans. The Pattisons did not contest the state court proceedings Hinman had initiated.

On March 20, 2001, the Pattisons filed a joint-consumer Chapter 7 bankruptcy. The summary of schedules disclosed $16,672.34 of unsecured priority debt, and $39,180.04 of unsecured non-priority debt. The Pattisons' unsecured debt included the state court judgment of $8,817.43 that Hinman had obtained.

Hinman filed an adversary proceeding objecting to the Pattisons' bankruptcy discharge. The bankruptcy court held a hearing, wherein the court heard testimony from the parties and several witnesses, and later issued a forty-five (45)-minute-long oral decision dismissing Hinman's adversary proceeding and discharging the Pattisons' debts in the underlying Chapter 7 bankruptcy case. Hinman then timely filed this appeal.

## III.

Hinman appeals the bankruptcy court's rejection of her claim that the Pattisons' bankruptcy discharge should be barred for failure to adequately and truthfully disclose their assets on their bankruptcy schedules.[1] 11 U.S.C. § 727(a)(4)(A) provides that the bankruptcy court shall grant debtors a discharge unless the debtor knowingly and fraudulently made a false oath. 11 U.S.C. § 727(a)(4)(A).

The Pattisons' undisclosed assets, Hinman alleged, derived from Andrew Pattison's work as an antique dealer, as well as from the Pattisons' business, Hope Chest Antiques, an antique store which the Patti-

---

1. The instant appeal is based solely on 11 U.S.C. § 727(a)(4)(A), however, Hinman's Complaint in the adversary proceeding also alleged violations of 11 U.S.C. § 727(a)(2)(A) and (a)(3), which state, in relevant part, that: (a)(2) the debtor, with intent to hinder, delay or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed
...
(A) property of the debtor, within one year before the date of the filing of the petition.

(a)(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure was justified under all of the circumstances of the case.

sons operated in Mount Morris, MI. Specifically, Hinman asserted (i) that the Pattisons' business had a sales tax license with the State of Michigan, (ii) that no sales tax monies had been submitted to the Michigan State Treasury, (iii) that the Pattisons' business records and receipts were lost, and (iv) that the Pattisons did not disclose these facts to their bankruptcy attorney. The Pattisons contend that while they derived a part of their family income from the purchase and resale of old household goods, this activity was not their principal source of income, and they were no longer actively engaged in resale activity at the time they filed their bankruptcy petition.

A person objecting to a debtor's discharge must prove, by a preponderance of the evidence, that 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) that the statement related materially to the bankruptcy case. *In re Keeney*, 227 F.3d 679, 685 (6th Cir.2000); *In re Hamo*, 233 B.R. 718, 725 (6th Cir. BAP 1999). The debtor's intent may be inferred from circumstantial evidence or from the debtor's course of conduct. *In re Hamo*, 233 B.R. at 724. Whether a debtor has made a false oath under 11 U.S.C. § 727(a)(4)(A), is a question of fact. *In re Keeney*, 227 F.3d at 685.

The bankruptcy court concluded that the first three elements of the *Hamo* and *Keeney* tests were met in that the Pattisons stated under oath that they did not own a business, and that those statements were both false and material. The bankruptcy court noted that Hope Chest Antiques had all of the indicia of a business, including a telephone, a shop with a sign indicating the business' name, a state sales tax I.D. number, the Pattisons intended for it to provide income, and they sold goods to customers from it. The failure to disclose this information was material to the administration of the bankruptcy estate. *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984)("a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property").

The bankruptcy court declined, however, to find that the Pattisons acted knowingly and fraudulently. Particularly significant for the bankruptcy court was the time period. Unlike the debtors in *Hamo* and *Chalik*, the Pattisons did not continue to operate Hope Chest Antiques on the eve of, and throughout, the filing of their bankruptcy petition. The fact that the business was closed down for approximately two years before the bankruptcy case commenced, and the fact that there was some reference, elsewhere in the schedules, to a business building on which the Pattisons owed rent, indicated that the failure to disclose, while material, was not knowing and fraudulent.[2]

The bankruptcy court's determination that the Pattisons' omissions were not knowing and fraudulent also was based on her opportunity to observe their demeanor and weigh their credibility during the hearing. Specifically, the bankruptcy court observed that:

As I watched [Hope Pattison] testify, frankly, my impression was not one of . . . I did not sense that she was an-

2. Other support for the bankruptcy court's decision are also found in the Oral Decision Transcript:

The failure to reveal Hope Chest Antiques' existence "was done more by mistake and inadvertence as to what the . . . question was asking for rather than as a knowing and a fraudulent effort to conceal from the Court, from the trustee, from Ms. Hinman . . ." Oral Decision Tr., Aug. 26, 2002, at 25.

**688**

swering it as somebody that oops, you've got me, but more as one that oh, my God, I didn't think of that.... At the end of ... the trial, I remain firmly convinced that ... both of them didn't disclose it not because they were trying to hide it either from the State of Michigan, or Ms. Hinman, or any other creditor, but because it had been closed down for at least two years by the time we got to the case. Oral Decision Tr., Aug. 26, 2002, at 24.

■ The bankruptcy court's findings are reviewed for clear error. *In re Hamo*, 233 B.R. at 726. A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *Id.* at 721. This court must give the bankruptcy court's opportunity to determine the witnesses' credibility due regard and should not discount those observations easily. Fed. Bankr.R. 7052, 8013. In light of the well-reasoned and extensive oral decision issued below, as well as the absence of any evidence in the record or in the appellate pleadings of intent to defraud, the court cannot say that it is left with the definite and firm conviction that the bankruptcy court committed a mistake. *In re Hamo*, 233 B.R. at 721. This court finds that the bankruptcy court was not clearly erroneous in concluding that Hinman failed to meet her burden to prove, by a preponderance of the evidence, that the Pattisons knowingly and fraudulently made a materially false oath. *In re Keeney*, 227 F.3d at 685. The Pattisons, thus, were entitled to a Chapter 7 discharge. For these reasons, the bankruptcy court's decision under 11 U.S.C. § 727(a)(4)(A) is **AFFIRMED.**

**IV.**

***ORDER DENYING BANKRUPTCY APPEAL***

This matter having come before the court, the court having reviewed the parties' briefs and the record on appeal, and being otherwise fully advised in the premises; now, therefore,

**IT IS ORDERED** that this bankruptcy appeal is hereby **DENIED**, and that the decision of the bankruptcy court granting debtors' Chapter 7 discharge is hereby **AFFIRMED.**

**IT IS SO ORDERED.**