*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b).  See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  07b0001n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   JOSE M. RIVERA, SR., | ) |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |
| | ) |
| MARVIN A. SICHERMAN, | ) |
| | ) |
| Plaintiff–Appellee, | ) |
| | ) |
| v. | )   No. 06-8013 |
| | ) |
| JOSE M. RIVERA, SR., | ) |
| | ) |
| Defendant–Appellant. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Cleveland
Case No. 05-1231

Argued:  November 8, 2006

Decided and Filed: January 11, 2007

Before: AUG, GREGG, and PARSONS, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Stephen D. Hobt, Cleveland, Ohio, for Appellant.   Richard A. Baumgart,
DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellee. **ON BRIEF:**
Stephen D. Hobt, Cleveland, Ohio, for Appellant.   Marvin A. Sicherman, Lisa A. Vardzel,
DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellee.

————————————————

## OPINION

————————————————

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. Jose M. Rivera, Sr. appeals an order of the bankruptcy court granting summary judgment in favor of the chapter 7 trustee on his complaint seeking an order revoking and denying the Debtor's discharge pursuant to 11 U.S.C. § 727(d)(2) and (a)(2)(B). For the reasons that follow, the bankruptcy court's order is AFFIRMED.

## I.   ISSUE ON APPEAL

The issue raised by this appeal is whether summary judgment was warranted on the Trustee's complaint to revoke or deny the Debtor's discharge under 11 U.S.C. § 727(d)(2) and (a)(2)(B).

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel and a final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's final order granting the Trustee's motion for summary judgment states conclusions of law which are reviewed de novo. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001). "De novo review means that the appellate court determines the law independently of the trial court's determination." *Id.*

## III.   FACTS

On January 22, 2003, Appellant Jose M. Rivera, Sr. ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.[1] Appellee Marvin A. Sicherman ("Trustee") was

_____

[1] Because the Debtor's bankruptcy case was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), generally effective October 17, 2005, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version. *See*

appointed as the chapter 7 trustee. The Debtor's bankruptcy attorney was James B. Kerner ("Kerner"). At the time the Debtor's petition was filed, he was also a plaintiff in a personal injury suit against the Catholic Diocese of Cleveland (the "Personal Injury Suit"). His personal injury attorneys were William M. Crosby ("Crosby"), and co-counsel Jeff Anderson ("Anderson"). The Personal Injury Suit was scheduled by the Debtor in an amount listed as "Unknown."

On March 10, 2003, the Trustee conducted the meeting of creditors. The Debtor testified that he understood that his Personal Injury Suit was property of his bankruptcy estate. The Debtor received his bankruptcy discharge on April 28, 2003. Soon thereafter, on June 19, 2003, the Personal Injury Suit was settled for $175,000.

On July 11, 2003, less than one month after the settlement of the Personal Injury Suit, the Trustee wrote to Crosby and Anderson, reiterating that the Personal Injury Suit was property of the Debtor's bankruptcy estate and inquiring as to the status of the case. On July 22, 2003, the Trustee received a facsimile from Kerner, the Debtor's bankruptcy attorney, advising that the Debtor's Personal Injury Suit had "apparently been settled for $175,000." On July 24, 2003, the Trustee received a facsimile from Anderson stating that Crosby had distributed to him his share of the fees for their representation of the Debtor in the Personal Injury Suit. No response was received from Crosby.

On February 14, 2004, the Trustee demanded that Crosby provide an accounting of any settlement monies received by the Debtor. On February 23, 2004, Crosby replied to the Trustee and curiously stated that the settlement was confidential, and Crosby would seek permission from the Debtor to disclose the settlement terms. At that time, Crosby had already distributed $15,000 of the settlement funds to the Debtor. On March 2, 2004, Crosby first informed the Trustee that the Debtor had been paid $15,000 from the settlement.

Thereafter, on March 23, 2004, Crosby emailed a draft letter addressed to the Trustee to be signed by the Debtor. That letter restated that the Debtor had received a $15,000 settlement

---

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

distribution.[2]  Subsequently, on May 12, 2004, the Debtor received an email from Crosby which read:

> I guess I'm trying to figure out how it happened that a couple of months ago, I had to tell the trustee how much you received and you had to separately inform him?  We helped craft that response, remember?
>
> *All I want to determine is if we can reasonably be assured that the inquiries are at an end and I can safely pay you over the balance which I've held in escrow, and not subsequently be stuck with a huge bill.*  Do you see?

(J.A. at 124.) (Emphasis added.)

On June 8, 2004, the Debtor was paid an additional $80,000 settlement distribution from Crosby's IOLTA account.  When this payment was made, both the Debtor and Crosby knew the Personal Injury Suit proceeds were property of the bankruptcy estate.  *The Trustee was not advised of this second distribution.*

On August 12, 2004, the Trustee filed a Motion for Turnover of Funds, seeking turnover of the $15,000 settlement distribution of which he was aware.  Thereafter, the following emails were exchanged between the Debtor and Crosby:

> August 16, 2004 – from the Debtor to Crosby:
> It is very IMPORTANT that you call me ASAP!
>
> August 17, 2004 – from the Debtor to Crosby:
> Attorney James Kerner call (sic) me and I asked him to dispute the issue.  He said that you were wrong.  That the diocese claim was an asset and that I was not entitle (sic) to any of the money and that you should have turned it over to the trustee.  I told him I would call you and call him back.  *I'm getting a little scared here.*
>
> August 18, 2004 – from Crosby to the Debtor:
> *Don't be afraid, Kerner is an idiot. . . .*
>
> September 2, 2004 – from the Debtor to Crosby:
> I received a letter from the Trustee and Attorney Kerner.  I feel we should meet as soon as possible.  I don't want to meet these guys and not be able to address them properly.  *I need to reply ASAP, this is not going to go away.*  The Trustee seems to be pressuring Mr. Kerner. . . .
>
> September 8, 2004 – from the Debtor to Crosby:
> *I realize you know best, but I don't know how long these guys are going to wait.*  Please let me know when we can get together.

---

[2] According to the Debtor's deposition testimony, most of his communication with Crosby occurred by email.

(J.A. at 128-131 and 134.) (Emphasis added.)

The Trustee's Motion for Turnover was heard by the bankruptcy court on September 7, 2004. An order granting the motion was entered on September 15, 2004.

On October 15, 2004, counsel for the Trustee wrote to Crosby acknowledging that the Trustee had received the $15,000. An accounting of any additional settlement distributions was again requested. The Trustee received no response from Crosby and subsequently sought records through a subpoena and an order pursuant to a Rule 2004 examination. Crosby again failed to respond.

The Debtor then obtained a substitute bankruptcy attorney, Jonathan E. Rosenbaum ("Rosenbaum"). On January 6, 2005, Rosenbaum wrote to the Trustee and asserted that the Debtor had "relied on Mr. Crosby's advice regarding the settlement proceeds and felt that since Mr. Crosby sent him the balance of settlement ($80,000) that it was proper to spend the money." (J.A. at 119.) During an October 10, 2005 deposition, the Debtor testified that, "Kerner said that I needed to turn the money in. And then Crosby said I don't need to." (J.A. at 207.) The Debtor further testified that he would rely on Kerner for advice in his bankruptcy case, and Crosby in his personal injury litigation. (J.A. at 222-23.) Assertedly believing that Crosby had reached a compromise with the Trustee, the Debtor spent the $80,000 balance of the settlement.

On May 9, 2005, the Trustee filed an adversary proceeding seeking an order revoking the Debtor's discharge under 11 U.S.C. § 727(d)(1), (d)(2) and/or (d)(3) and denying the Debtor's discharge under 11 U.S.C. § 727(a)(6)(A) and/or (a)(2)(B). The Trustee alleged that the Debtor's discharge should be revoked and denied because: (1) the Debtor obtained his discharge through fraud by representing that he received only $15,000 in settlement of his Personal Injury Suit; and (2) the Debtor fraudulently failed to surrender the second payment of $80,000 even though he knew the money was property of the bankruptcy estate.

The Debtor filed a motion for summary judgment. The Debtor asserted that his discharge should not be revoked because the Trustee was advised of the total settlement amount by Kerner. The Debtor also asserted that he relied upon the advice of Crosby in good faith. The Trustee filed a cross motion for summary judgment. The Trustee submitted: (1) his affidavit chronologically

summarizing the events; (2) a transcript of the meeting of creditors; (3) the Debtor's deposition; and (4) the series of emails between the Debtor and Crosby.

Following a hearing on the cross motions for summary judgment, the bankruptcy court denied the Debtor's motion and granted the Trustee's motion, in part. Determining there were no genuine issues of material fact, the court held that the Debtor knowingly and fraudulently failed to deliver property of the estate to the Trustee. The court, therefore, revoked and denied the Debtor's discharge. 11 U.S.C. § 727(d)(2) and (a)(2)(B). The Debtor then filed this timely appeal.

## IV. DISCUSSION

Summary judgment in adversary proceedings is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Bankr. P. 7056. The Sixth Circuit Court of Appeals has succinctly described the standard to grant a motion for summary judgment as follows:

> A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving party may discharge its burden by "pointing out to the [bankruptcy] court . . . that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 198 (B.A.P. 6th Cir. 1998) (citing *Hall v. Tollett,* 128 F.3d 418, 421-22 (6th Cir.1997)) (internal citations omitted) (last three alterations in *Gibson*).

A material fact is one whose resolution will affect the determination of the underlying action. *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir.1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 727 (6th Cir.1996) (citation omitted). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. American Eng'g Co.,* 33 F.3d 727, 730 (6th Cir.1994) (citations omitted). In determining

whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1986).

The Trustee sought to revoke the Debtor's discharge pursuant to 11 U.S.C. § 727(d)(1), (d)(2) and/or (d)(3) and to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and/or (a)(6). 11 U.S.C. § 727 reads, in pertinent part:

(a) The court shall grant the debtor a discharge, unless–

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed–

. . . .

(B) property of the estate, after the date of the filing of the petition;

. . . .

(6) the debtor has refused, in the case–

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify . . . .

. . . .

(d) On request of the trustee . . . the court shall revoke a discharge granted under subsection (a) of this section if–

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate . . . and knowingly and fraudulently failed to report the acquisition of . . . such property, or to deliver such property to the trustee; or

(3) the debtor committed an act specified in subsection (a)(6) of this section[.]

The Trustee has the burden of proving, by a preponderance of the evidence, that each element of the applicable provisions of 11 U.S.C. § 727 has been met. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)*; Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999).

A.  Discharge Obtained Through Fraud – 11 U.S.C. § 727(d)(1)

Pursuant to 11 U.S.C. § 727(d)(1), the Trustee's motion for summary judgment sought to revoke the Debtor's discharge on the grounds that it was obtained by fraud.   There is no evidence in the record to show that the discharge was obtained by fraud.  The Debtor's discharge was granted on April 28, 2003.  His Personal Injury Suit was not settled until June 19, 2003.  Because the settlement was not perfected until after the discharge was granted, the discharge could not have been obtained by fraud.  The bankruptcy court correctly held that the Trustee failed to meet his burden.

B.  Revocation of Discharge – 11 U.S.C. § 727(d)(2)

The Trustee also sought to revoke the Debtor's discharge under 11 U.S.C. § 727(d)(2).  He alleged that the Debtor failed to report the receipt of the $80,000 in settlement proceeds and failed to deliver those funds to the estate.  Without question, the record establishes that the Debtor, through his bankruptcy attorney, Kerner, advised the Trustee that his Personal Injury Suit had settled for $175,000.  As a matter of law, the $80,000 received by the Debtor was property of the estate.  It is also undisputed that the Debtor spent the entire $80,000 without informing the Trustee.  The only dispute is whether the Debtor's failure to deliver the $80,000 to the Trustee was knowing and fraudulent as required by 11 U.S.C. § 727(d)(2) in order to revoke the Debtor's discharge.

The Debtor's fraudulent intent may be established by showing that the Debtor knowingly intended to defraud the trustee or engaged in such reckless behavior as to justify the finding of fraud. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992); *see also In re Keeney*, 227 F.3d at 686.  A reckless indifference to the truth, which can be shown by circumstantial evidence, is the equivalent of fraud. *Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d 1330, 1331 (2nd Cir. 1969) (per curium); *see also Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001).  Because only the debtor can testify directly concerning his intent and the debtor herein asserts that his intentions were not fraudulent, determining whether he acted with fraudulent intent is difficult. However, fraudulent intent may be inferred from all the facts and circumstances.  *In re Keeney*, 227 F.3d at 686; *In re Yonikus*, 974 F.2d at 905.  Additionally, the Debtor's "whole pattern of conduct" can support a finding of fraudulent intent.  *First Texas Sav. Ass'n., Inc. v. Reed (Matter of Reed)*, 700 F.2d 986, 991 (5th Cir. 1983); *see also In re Hamo*, 233 B.R. at 724; *In re Yonikus*, 974 F.2d at 905-06.

The Debtor argues that the issue of intent (delving into a person's state of mind) is a question of fact which precludes granting a summary judgment. *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002); *see also Messing v. Paul*, 147 Fed. Appx. 437 (6th Cir. 2005) (unpub.). However, cases involving state of mind issues are not always inappropriate for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).[3] Even where intent is at issue, "summary judgment is appropriate if all reasonable inferences defeat the claims of one side . . . ." *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (B.A.P. 9th Cir. 1999) (quoting *Newman v. Checkrite Cal. Inc.*, 912 F. Supp. 1354, 1380 (E.D. Cal. 1995)). "[S]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Furthermore, if a denial of knowledge is "utterly implausible, in light of conceded or irrefutable evidence that no rational person could believe it" summary judgment is appropriate. *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

In support of his motion for summary judgment and in opposition to the Trustee's motion, the Debtor offered his own affidavit. The Debtor's affidavit asserts, in pertinent part,

5.      I received conflicting advice from my bankruptcy attorney (Kerner) and my personal injury attorney (Crosby) regarding whether I had to surrender the proceeds of this settlement to the Trustee or whether I could spend the money. . . .

6.      The case was settled on June 19, 2003. The money was left in my personal injury attorney's trust account until June 8, 2004 so that my attorneys could resolve the issue of whether the money had to be turned over to the trustee.

---

[3] *See, e.g., Garrett v. Vaughan (In re Vaughan)*, 342 B.R. 385, 2006 WL 751388 (B.A.P. 10th Cir. March 22, 2006) (table) (affirming grant of summary judgment under § 727(a)(4)(A) where debtor failed to list certain assets and interests on schedules)*; First Nat'l Bank, Larned v. Davison (In re Davison)*, No. KS-04-013, 2004 WL 2852352 (B.A.P. 10th Cir. June 29, 2004) (unpub.) (affirming grant of summary judgment under § 727(a)(4)(A) where debtors failed to reveal certain substantial prepetition transfers)*; Taunt v. Patrick (In re Patrick)*, 290 B.R. 306 (Bankr. E.D. Mich. 2003) (granting summary judgment under § 727(a)(2)(B) where debtor failed to provide trustee with certain financial documentation and failed to permit trustee to determine value of property of estate which debtor sold)*; In re Chavin*, 150 F.3d 726 (7th Cir. 1998) (affirming grant of summary judgment under § 727(a)(4) where debtor failed to reveal valuable stock options and a partnership interest).

7.      The Trustee contacted neither me nor my attorney after I notified him of the settlement. Had the Trustee contacted me or my bankruptcy attorney, I would have immediately surrendered the entire amount to him.

8.      As a result, both I and my bankruptcy attorney believed that my personal injury attorney had reached an understanding with the trustee and that I would only have to turn over $15,000.00 to the Trustee which I did. This misunderstanding arose because the Trustee failed to contact me or my Bankruptcy attorney.

9.      At no time did I intentionally or fraudulently withhold information or money from the Trustee.

(J.A. at 272.)

The summary judgment record contradicts the Debtor's self-serving affidavit. From the beginning of his bankruptcy case, the Debtor acknowledged that his Personal Injury Suit belonged to the bankruptcy estate. He listed the pending litigation on his schedules. He testified at the meeting of creditors that he understood that the claim belonged to the estate. He testified at his deposition that Kerner, his bankruptcy attorney, told him he must turn the money over to the Trustee.

In the face of losing his discharge and after spending the money, the Debtor now argues that he relied on the advice of Crosby, his personal injury attorney, that he could spend the settlement proceeds. The Debtor asserts that both he and Kerner, his bankruptcy counsel, believed that Crosby had reached an agreement with the Trustee that the $15,000 which had been turned over resolved the matter. The Debtor's assertions are totally negated by the emails the Debtor sent to Crosby, coupled with the Debtor's own deposition testimony. The Debtor's August 17, 2004 email to Crosby stated that Kerner had advised him to turn over the full amount of the settlement to the Trustee. Further, the Debtor's email of September 2, 2004, to Crosby states that he received a letter from the Trustee and Kerner and that the Trustee was pressuring Kerner. Moreover, at his October 10, 2005, deposition, the Debtor testified that, "Kerner said that I needed to turn the money in." (J.A. at 207.) While the Debtor asserts that Kerner believed the $15,000 turnover was negotiated between Crosby and the Trustee, the evidence belies the falsity of this assertion—it shows that Kerner continued to advise the Debtor to turn over the full settlement. In this instance, the Debtor's contradictory statement in his affidavit is insufficient to create a genuine issue of material fact. *See United States ex rel. Compton v. Midwest Specialties, Inc.* 142 F.3d 296, 303 (6th Cir. 1998) (affirming grant of summary judgment where contractual intent at issue and despite affidavit contradicting prior sworn testimony); *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)

("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."); *see also Woods v. Allied Concord Fin. Corp.*, 373 F.2d 733, 734 (5th Cir. 1967) (finding no genuine issue of material fact created by defendant's affidavit, which contradicted earlier sworn testimony, containing mere conclusions of fact and not attempting to answer admissions made in deposition).

Generally, reliance on counsel can show that the Debtor lacked the requisite intent required to revoke or deny his discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986). However, his reliance must be reasonable and in good faith. *Id.*; *U.S. v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994); *Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 629 (B.A.P. 6th Cir. 2000); *In re Colvin*, 288 B.R. 477, 483 (Bankr. E.D. Mich. 2003) ("[R]eliance on the advice of counsel can save a debtor from the consequences of failing to disclose assets only when that reliance is reasonable and in good faith.").

This Panel has carefully reviewed the record. The uncontested evidence mandates a conclusion that the Debtor's alleged reliance on Crosby's advice was unreasonable. The Debtor obtained separate counsel to represent him in his bankruptcy case. His claimed reliance on the personal injury counsel, rather than the advice of bankruptcy counsel, was neither reasonable nor in good faith. This is shown by the Debtor's deposition testimony that he would rely on Kerner for advice in his bankruptcy case, and Crosby in his personal injury litigation. (J.A. at 222-23.) His convenient later explanation that he relied on Crosby's advice, rather than Kerner's, demonstrates a reckless indifference to the truth. This is tantamount to fraud. *Diorio*, 407 F.2d at 1331; *In re Sholdra*, 249 F.3d at 382. His reliance upon the advice of Crosby was also unreasonable given the bankruptcy court's order on September 15, 2004 for turnover of the $15,000. This court order, together with Kerner's advice to turn over the full settlement and the Debtor's acknowledgment at the meeting of creditors of his obligation to turnover the money, permits only one *reasonable* inference: the Debtor knew he was obligated to turn over the *full* settlement. His "whole pattern of conduct" supports a finding of fraudulent intent. *Matter of Reed*, 700 F.2d at 991; *In re Hamo*, 233 F.3d at 724; *In re Yonikus*, 974 F.2d at 905-06. The Debtor's mere assertion that he did not "intentionally or fraudulently withhold information or money from the Trustee" through his self-serving affidavit, with no significant probative evidence to support his position, is insufficient to

defeat summary judgment. *See Solomon v. Barman (In re Barman)*, 237 B.R. 342, 351 (Bankr. E.D. Mich. 1999) (citing *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998)). Because of the Debtor's own testimony that his bankruptcy attorney advised him to turn over the full settlement to the Trustee, his denial of knowledge (based on Crosby's advice) that he needed to turn over the $80,000 is utterly implausible. The Debtor failed to meet his burden to identify specific facts in the record that would create a *genuine* issue of material fact. The Debtor failed to provide evidence on which a fair-minded jury could reasonably return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).

Based on the record before the Panel, the Trustee convincingly met his burden of showing that there were no genuine issues of material fact on this issue. Therefore, the bankruptcy court properly granted summary judgment in favor of the Trustee and properly revoked the Debtor's discharge.[4]

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order granting summary judgment in favor of the Trustee and revoking the Debtor's discharge is AFFIRMED.

---

[4] The bankruptcy court properly revoked the Debtor's discharge. Accordingly, the Panel does not believe it was also necessary to issue an order denying the discharge and, therefore, is not ruling on the bankruptcy court's order denying the discharge.