**In re Ronald E. ROSELLE, Debtor.**

**No. 00–57820.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Feb. 8, 2002.

Robert E. Bardwell, Jr., Ricketts & Onda Co. LPA, Columbus, OH, for Debtor.

William B. Logan, Jr., Columbus, OH, Chapter 7 Trustee.

Alexander G. Barkan, Columbus, OH, Assistant United States Trustee.

### MEMORANDUM OPINION
### AND ORDER

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law on the Trustee's Objection to Debtor's Claim of Exemption filed by William B. Logan, Jr. ("Trustee") and the Memorandum in Opposition filed on behalf of Ronald E. Roselle ("Debtor"). The dispute concerns the Debtor's right to claim as exempt, two private insurance policies under the disability exemption provision of Ohio law. Based upon a review of the pleadings, testimony, including an assessment of the Debtor's credibility, documents received into evidence, and statements of counsel, the Court has determined that the Trustee's Objection should

be sustained in part. The Court has concluded that the two private insurance policies are covered by the Ohio disability insurance exemption provision, but that the entire amount payable is not reasonably necessary for the support of the Debtor. A brief summary of the facts will illustrate the bases for this decision.

Between 1970 and 1988, the Debtor purchased three private insurance policies from Great West Life, Cigna Group Insurance, and New England Mutual Life Insurance Company. The Debtor testified that he became disabled in 1991 after developing fibromyalgia, degenerative disc disease, adult attention deficit disorder, and chronic fatigue syndrome. The Debtor also testified that he suffers from severe depression, arthritis and hypertension. According to the Debtor's testimony, he began to receive monthly benefit payments from his insurance policies in 1991 based upon his disability. Six years later, in 1997, however, the Debtor purchased a home currently valued at $200,000.00. The unmarried Debtor is now 58 years old, and he does not have any dependents.

The Debtor filed the instant chapter 7 bankruptcy proceeding on August 30, 2000. He was represented by Ronald K. Nims. On his Schedule B–Personal Property, the Debtor did not disclose any interest in the private insurance policies, and did not claim them exempt on his Schedule C. The Debtor, however, showed monthly income from the insurance policies in the amount of $3,884.53.[1] On Schedule F–Creditors Holding Unsecured Nonpriority Claims, the Debtor disclosed indebtedness in the amount of $51,679.04. This amount includes seven credit cards with charges incurred between 1998 and 2000, and with balances ranging from approximately $2,500.00 to $16,000.00. The Debtor testified that some of the credit card obligations may date as far back as his trip to Las Vegas in 1996, five years after the disability declaration. The Debtor scheduled personal property in the total amount of $3,786.00, including an automobile valued at $1,000.00, a Charles Schwab Common Stock Account valued at $929.35, and New England Securities valued at $107.55. On Schedule D–Creditors Holding Secured Claims, the Debtor disclosed that his home, valued at $200,000.00, was subject to a mortgage of Bank One in the amount of $202,000.00 and a judgment lien of a former attorney in the amount of $12,000.00. The Debtor testified that he is four months in arrears on his mortgage payments.

On December 19, 2000, the Debtor filed a *pro se* Petition for Voluntary Dismissal. In this pleading the Debtor asserted that his chapter 7 petition was filed erroneously. Specifically, the Debtor claimed that he was advised by his attorney that his case would be a no asset case, that the lien held by the former attorney would be dischargeable, and that his insurance policies were exempt. The Debtor also asserted that he did not have the ability to continue with this bankruptcy because the proceeding was more complex than he was advised.

On January 5, 2001, an Objection by Chapter 7 Trustee to Petition for Voluntary Dismissal was filed on the basis that the Debtor had not shown cause under 11 U.S.C. section 707(a). On February 27, 2001, the Court entered an Order Denying Debtor's Petition for Voluntary Dismissal, and on May 22, 2001, now represented by Robert E. Bardwell, Jr., the Debtor

---

1. On or about January 23, 2001, the Debtor's payments from Great West Life ceased, under the terms of the policy.

amended his Schedule C to claim the monthly insurance payments exempt pursuant to Ohio Revised Code sections 2329.66(A)(6)(e), 2329.66(A)(10)(b), 3923.19 and 42 U.S.C. section 407. On June 7, 2001, the Trustee's instant Objection was filed. The Trustee asserts that the payments from the two private insurance policies are not of the type covered by O.R.C. section 2329.66(A)(10)(b).[2] The Trustee has not challenged the Debtor's exemption of the monthly Social Security benefits ($1,068.00), and has conceded that the sum of $600.00 per month from the two private insurance policies may be claimed exempt pursuant to O.R.C. sections 2329.66(A)(6)(e) and 3923.19. It is the Trustee's position that after the allowance of these exemptions, the balance of $1,853.30 is payable to the estate for distribution to creditors.

The Debtor filed a response to the Trustee's Objection on June 22, 2001, arguing that the monthly payments were fully exempt under Ohio law. A hearing was conducted on July 30, 2001, and at the conclusion the Debtor testified that he would supplement the record with a copy of the Cigna Group Insurance policy. On January 25, 2002, the Debtor asserted that the Cigna Group Insurance policy still could not be located, but supplied correspondence from one of its employees. The correspondence indicates that the policy is based upon disability.

According to the Debtor's Schedule I–Current Income of Individual Debtor(s) presented at the hearing, he has monthly income of $3,521.30, which includes $1,068.00 in Social Security benefits, $453.30 from Cigna Group Insurance, and $2,000.00 from New England Mutual Life Insurance Company. The Debtor's current monthly expenses total $5,819.00, according to Schedule J–Current Expenditures of Individual Debtor(s), presented at the hearing. His monthly expenses include items such as a mortgage payment in the amount of $1,809.00, $925.00 for medical and dental expenses, $450.00 for food, $200.00 for home maintenance, $350.00 for real estate taxes, $150.00 for telephone, including a cell phone, $155.00 for long-term care insurance the Debtor had not yet obtained, $110.00 for housecleaning, $250.00 for transportation, $75.00 for post-petition credit cards with an approximate balance of $900.00, $100.00 in bankruptcy attorney fees, and $507.00 for a nondischargeable judgment that was not being paid.[3]

■■■ Based upon the testimony and a review of the available documents, the Court concludes that the two private insurance policies at issue appear to both be based upon disability. The Trustee has not offered any evidence in his Objection or at trial to sustain his burden that the

---

**2.** O.R.C. section 2329.66(A)(10)(b) provides, in relevant part:

(A) Every person who his domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows: ... (10)(b) ... the person's right to receive a payment under any ... annuity, or similar plan or contract ... *on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the person and any of the person's dependents,* ... (emphasis added)

**3.** The Schedule J filed when the case was commenced on August 30, 2000, shows approximately $1,800.00 less in monthly expenses. The increased expenses now claimed by the Debtor include, for example, an extra $325.00 per month in medical and dental expenses. Also, in the new Schedule J, for the first time the Debtor claimed expenses for the long-term care insurance, real estate taxes, post-petition credit cards, attorney's fees, house cleaning, and payment on the nondischargeable judgment, in addition to $50.00 per month in "miscellaneous" expenditures.

two insurance polices are not disability policies covered under O.R.C. section 2329.66(A)(10)(b).[4] The inquiry then must shift to whether the Debtor's exemption claim is in excess of an amount that is reasonably necessary for his support, as required by the above-detailed provision. In determining what payments are "reasonably necessary", the Court does not have to decide whether a debtor has sufficient funds to sustain a former lifestyle. Instead, the inquiry is whether there is enough to sustain present and future needs, taking into account any special circumstances. *In re Hamo* at 723; *In re Parker*, 219 B.R. 972, 974–975 (Bankr. S.D.Ohio 1998). Factors that have been considered for purposes of making the reasonably necessary determination under the Ohio exemption provisions include:

1. The debtor's present and anticipated living expenses;

2. The debtor's present and anticipated income from all sources;

3. The age of the debtor;

4. The health of the debtor;

5. The debtor's ability to work and earn a living;

6. The debtor's job skills, training, and education;

7. The debtor's other assets;

8. Liquidity of other assets;

9. Special needs of the debtor; and

10. The debtor's financial obligations.

*In re Hamo* at 723; *In re Parker* at 975. When analyzing the facts and circumstances of each case, the Court is not restricted to these factors, nor is the court required to specifically address each factor. *In re Hamo* at 723.

4. A party objecting to claimed exemptions must prove that the exemption is not properly claimed by a preponderance of the evidence. Fed. R. Bankr.P. 4003(c); *In re Lindsay*, 261 B.R. 209, 211–212 (Bankr.S.D.Ohio 2001); *In*

■ The Court has concluded that the Debtor's current lifestyle is in excess of what is reasonably necessary given his age, health, and employment status. Indeed, it appears to be the lifestyle of someone who is gainfully employed and is able to meet their monthly obligations. As noted earlier, the Debtor is currently four months behind on his mortgage payments. It appears from the Schedules that the Debtor incurred a substantial amount of charge card debt between 1996 and 2000. During these years subsequent to the disability declaration, he purchased a $200,000.00 home, traveled to Las Vegas and invested in the stock market. Questionable monthly expenses include: (a) $1,809.00 for a mortgage payment; (b) $350.00 in real estate taxes; (c) $200.00 for home maintenance; (d) $150.00 per month for telephone service, including a cell phone; (e) $155.00 for long-term care insurance, which the Debtor had not yet obtained; (f) $110.00 for housecleaning; (g) $507.00 related to a nondischargeable judgment debt that is not being paid; (h) $75.00 per month in charge card payments, and (i) $925.00 for medical and dental expenses.

The housing-related expenses (mortgage, taxes, utilities, maintenance and cleaning) total approximately $2,800.00 per month. They could be drastically reduced by relocation to an apartment. In view of the Debtor's health, long-term care insurance in any amount may be too costly. The Debtor may have to rely on any available governmental assistance to supplement his disability income when the time arises for long-term care. Regarding the Debtor's monthly medical and dental ex-

*re Erbaugh*, 199 B.R. 367, 369 (Bankr. S.D.Ohio 1996); *In re Hamo*, 233 B.R. 718, 723 (6th Cir. BAP 1999); *In re Hoppes*, 202 B.R. 595, 597 (Bankr.N.D.Ohio 1996).

penses ($925.00), no independent testimony from a medical professional was provided, and the monthly expenses specifically identified at the hearing only amount to approximately $500.00 per month. With reference to the nondischargeable judgment, the record indicates that no payments have been made. The Court cannot find that continued credit card payments to new creditors are reasonably necessary in view of the large amount of credit card indebtedness that has been discharged. After the $900.00 is paid to post-petition creditors, additional funds would be available for living expenses. Finally, the Debtor's credibility regarding his expenses is called into question in view of the significant increase claimed during the hearing compared to those originally disclosed. The bankruptcy Petition and the Schedules were signed by the Debtor on August 30, 2000, under penalty of perjury, and reflect substantially lower expenses.

The Court recognizes that the monthly Social Security income of $1,068.00 and the sum of $600.00 from the two private insurance policies not challenged by the Trustee may not be enough to support the Debtor. On the other hand, the complete exemption of both private insurance policies that provide a total of $2,453.30 in monthly income is substantially in excess of what is reasonably necessary.

Accordingly, the Trustee's Objection to Debtor's Claim of Exemption in Monthly Disability Payments is **SUSTAINED** in part. Within thirty days from entry of this Order, the parties may agree to the balance of the monthly private insurance income ($1,853.30) that is reasonably necessary in compliance with this Memorandum Opinion and Order. In the absence of such an agreement, the Court will enter a subsequent order determining the bal-

ance of the monthly private insurance income that is reasonably necessary.

**IT IS SO ORDERED.**