**In re Denise R. ABBOTT, Debtor.**

No. 10–57519.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 2, 2012.

Susan J. McDonald, Zanesville, OH, for Debtor.

***MEMORANDUM OPINION AND OR-DER (I) DENYING IN PART AND GRANTING IN PART TRUSTEE'S AMENDED AND SUPPLEMEN-TAL MOTION FOR TURNOVER OF PROPERTY OF THE ESTATE AND (II) OVERRULING IN PART AND SUSTAINING IN PART OB-JECTION TO EXEMPTION***

***(Related to Doc. Nos. 49 and 66)***

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came before the Court for an evidentiary hearing ("Hearing") on March 25, 2011, upon Chapter 7 Trustee Clyde Hardesty's ("Trustee") Amended and Supplemental Motion for Turnover of Property of the Estate and Objection to Exemption ("Amended Turnover Motion and Exemption Objection") (Doc. 49 and 66) and the Debtor's Response (Doc. 53). Present at the Hearing were Brent A. Stubbins, counsel for the Trustee, Susan J. McDonald, counsel for Debtor, and debtor Denise R. Abbott ("Debtor").

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is properly before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The issue before the Court is whether benefits payable to Debtor pursuant to an annuity contract, which was established based on Debtor's wrongful death claim for the death of her husband, are exempt pursuant to Ohio law. For the reasons stated below, the Court concludes that, under OHIO REV.CODE § 2329.66(A)(12)(b), Debtor may claim exempt the Benefits (as defined herein) payable from the Annuity (as defined herein), to the extent set forth below (see Section VI of this Opinion). This Court, therefore, *denies in part and grants in part,* the Trustee's Amended Turnover Motion, and *overrules in part and sustains in part,* the Exemption Objection.

**I. Findings of Fact**

Debtor was married to Timothy P. Abbott ("Mr. Abbott") on December 4, 1976. Debtor's marriage to Mr. Abbott produced three children. In or around 1983, after suffering from a chronic cough, Mr. Abbott was diagnosed with a benign tumor lodged between his lungs. As a result of an error during a minor surgery, which left a hole in one of Mr. Abbott's lungs, he developed empyema and gangrene. Within approximately 10 days of his initial surgery, on March 8, 1983, Mr. Abbott died from a severed pulmonary artery during a third surgery. At the time of his death, Mr. Abbott was twenty-six (26) years old and Debtor was twenty-four (24). Explaining her financial situation at the time of Mr. Abbott's death, Debtor testified that, "[Mr. Abbott] worked as a construction person, so our three children were out-of-pocket expenses, so to speak ... we were a struggling young couple but happily married." Debtor was a stay-at-home mother at the time of Mr. Abbott's death.

Based upon the circumstances surrounding Mr. Abbott's death, Debtor as-

serted a wrongful death claim (the "Wrongful Death Claim") against the Pennsylvania Hospital. Debtor's Wrongful Death Claim was settled without litigation pursuant to a structured settlement between Debtor and Pennsylvania Hospital Insurance Company ("PHICO"). The purpose of the structured settlement was to compensate Debtor for the loss of her husband. In connection with the structured settlement, PHICO purchased an annuity ("Annuity"), which created a future payment stream ("Benefits") payable to Debtor. The Annuity was established for future payment and distribution of Debtor's Benefits. The Annuity was issued and is administered by Metropolitan Life Insurance Company ("MetLife"). Since November 29, 1984, Debtor has received $2,000.00 monthly. Additionally, Debtor is entitled to receive $200,000.00 on October 29, 2014.

The Annuity is owned by PHICO, and all rights incident of ownership of the Annuity reside with PHICO. It is currently paying Debtor $2,000.00 per month "through October 29, 2014 and life thereafter." The Annuity cannot be assigned or pledged as collateral for a loan. Although Debtor is the current payee of the Benefits, nothing in the record suggests that the payee cannot be changed at PHICO's discretion, or that PHICO could not use another method to pay the agreed sum to Debtor.

Debtor is a 52 year-old widow and divorcee that has been married multiple times. She is a high school graduate, but has no formal education beyond that except for a two-week Certified Nursing Aide ("CNA") vocational certificate. Although Debtor was a stay-at-home mother for several years, she has worked in hospitals, nursing homes and assisted living facilities. Because of foot and arm problems she cannot perform that kind of work anymore, so she has moved into clerical work.

Debtor is currently employed by Genesis Healthcare as a Release of Information associate in Electronic Medical Records. She makes $8.74 per hour and relies on the $2,000.00 monthly Benefits to meet living expenses. Debtor is not likely to have any other source of income in the next four years. She has no retirement or savings, and there is no evidence that she will be entitled to Social Security benefits upon reaching retirement age. Debtor has no dependents; she is estranged from her three children. Further, while Debtor has a relationship with her ailing mother, she does not have close relationships with her siblings.

Debtor has various medical issues and expenses, including tendonitis in both arms and a bad foot. She needs surgery on her foot but cannot afford it, so she currently uses orthotics to help with the pain of walking at the cost of $383.16, which appears to be a one-time expense.

## II. Procedural Background

On June 23, 2010 ("Petition Date"), Debtor filed her Petition for Relief under Chapter 7 of the Bankruptcy Code, and the Trustee was appointed on even date. Debtor's original Schedules B and C (Doc. 1) omitted any disclosure of or claimed exemption in the Annuity or the Benefits. Debtor subsequently made several amendments to her Schedules B and/or C culminating in her third amendment to Schedule B and second amendment to Schedule C (Doc. 32), filed October 12, 2010. Those amendments disclosed the Benefits payable to Debtor and claimed an exemption therein pursuant to OHIO REV.CODE § 2329.66(A)(12)(b). Debtor described the exemption on Amended Schedule C as follows:

***Other Personal Property of Any Kind Not Already Listed***

**Wrongful death settlement for 48 months**

**@$2000.00 plus $200,000.00 lump sum**

**10–29–2014**

**Location: 4852 Centennial Parkway, Zanesville**

**OH 43701**

**Ohio Rev.Code Ann. § 2329.66(A)(12)(b)**

**$296,000.00**

In the interim, on October 7, 2010, the Trustee filed a Motion for Turnover (Doc. 31), followed by an Objection to Claimed Exemption in Periodic Payment Stream and Lump Sum from Wrongful Death Settlement on October 13, 2010 (Doc. 34). Approximately two months later, on December 10, 2010, the Trustee filed the Amended Turnover Motion and Exemption Objection (Doc. 49). On February 16, 2011, Debtor filed her Response (Doc. 53).

On March 25, 2011, the Court held an evidentiary hearing on the Amended Turnover Motion and Exemption Objection and Debtor's Response. Neither the Trustee nor Debtor presented a copy of the settlement agreement with PHICO or the Annuity contract administered by MetLife to the Court as evidence in support of their respective positions. The parties stipulated to the admission of a form titled Verification of Benefit, and to the accuracy and veracity of its contents and terms. Neither party presented any live testimony during the Hearing. Both parties relied on Debtor's testimony at a Rule 2004 examination ("2004 Examination") conducted by the Trustee.[1]

After the hearing, Debtor again amended her Schedules B and C (Doc. 63). Neither document changed the previous Schedules as they related to the Benefits and Debtor's claim of exemption therein. The Trustee filed an Objection to Debtor's amended Schedules (Doc. 66) to preserve his initial objection. This Memorandum Opinion and Order resolves all pending objections.

### III. Applicable Law

The commencement of a bankruptcy case creates an estate comprised of all of a debtor's property. 11 U.S.C. § 541(a). Pursuant to Section 522(b) of the Bankruptcy Code, an individual debtor may exempt specific property from the bankruptcy estate. 11 U.S.C. § 522(b)(1). Section 522(b)(2), however, allows individual states to "opt out" of the federal exemption scheme. The effect of "opting-out" is to allow states to create more generous or restrictive exemptions for debtors than those provided by the federal exemptions listed in § 522(d). The state of Ohio has elected to prohibit the use of the federal exemption scheme by Ohio residents. OHIO REV.CODE § 2329.662. Thus, a debtor who is domiciled in the state of Ohio is limited to the exemptions enumerated in OHIO REV.CODE § 2329.66.[2]

---

1. During the 2004 Examination, Debtor's attorney made several representations but did not submit any evidence relating to same. Therefore, the Court cannot consider the representations.

2. Notably, courts may look to legislative history of the federal legislation or cases applying the federal legislation for aid in interpretation of the state statute where the state statute is similar or identical to the federal statute. *See*

*e.g., In re Vickers*, 408 B.R. 131, 138 (Bankr. E.D.Tenn.2009) (concluding that, "[w]here a state has borrowed from similar federal legislation, federal courts may presume that the state legislatures intended what Congress intended."); *Rousey v. Jacoway*, 544 U.S. 320, 125 S.Ct. 1561, 1569, 161 L.Ed.2d 563 (2005) (examining whether an IRA contained language similar to the federal exemption statute); *Baumgart v. Alam (In re Alam)*, 359 B.R.

Debtor claims the Benefits exempt pursuant to Oʜɪᴏ Rᴇᴠ.Cᴏᴅᴇ § 2329.66(A)(12)(b). Section 2329.66(A)(12)(b) provides in pertinent part as follows:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
>
> * * *
>
> (12) *The person's right to receive,* or moneys received during the preceding twelve calendar months from, any of the following: ... (b) A payment on account of the wrongful death of an individual of whom the person was a dependent on the date of the individual's death, to the extent reasonably necessary for the support of the person and any of the person's dependents....

Oʜɪᴏ Rᴇᴠ.Cᴏᴅᴇ § 2329.66(A)(12)(b) (emphasis added).[3]

▮▮▮▮ Generally, exemptions should be liberally construed in favor of the debtor, and "[w]hen doubt exists as to the intent of the statute, that doubt should be resolved in favor of the debtor." *In re Rhinebolt,* 131 B.R. 973, 975 (Bankr.S.D.Ohio 1991)

(citations omitted). Initially, the burden of proving that an exemption is not properly claimed rests on the objecting party. Fed. R. Bank. P. 4003(c). "Upon the introduction of sufficient evidence to rebut the *prima facie* validity of the exemption, the burden shifts to the debtors to demonstrate that the exemption is proper." *Rhinebolt,* 131 B.R. at 975 *(citing In re Lester,* 124 B.R. 63 (Bankr.S.D.Ohio 1990); *In re Hollar,* 79 B.R. 294, 296 (Bankr.S.D.Ohio 1987)). "If however, the trustee fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand." *In re Guikema,* 329 B.R. 607, 621 (Bankr.S.D.Ohio 2005) (internal quotations and citations omitted).

## IV. Arguments of the Parties

In his Amended Turnover Motion and Exemption Objection, the Trustee seeks turnover from Debtor of the $2,000.00 monthly Benefits that Debtor receives, and *present* turnover of the $200,000.00 lump sum Benefit payable on October 29, 2014. In support of his request for turnover, the Trustee objects to Debtor's claimed exemption of the Benefits as a payment on account of wrongful death, arguing that an

---

142 (6th Cir. BAP 2006); *In re Chapman,* 424 B.R. 823, 828 (Bankr.E.D.Tenn.2010) (citing *In re Vickers); In re Green,* 2007 WL 1031677, *1–2, 2007 Bankr.LEXIS 1182, at *3–4 (Bankr.E.D.Tenn. Apr. 2, 2007). This authority, however, is inapplicable here, because the Ohio exemption statute regarding wrongful death awards is more restrictive than the federal statute, providing for an exemption based upon, "The person's *right to receive, or moneys received* during the preceding twelve calendar months...." Oʜɪᴏ Rᴇᴠ.Cᴏᴅᴇ § 2329.66(A)(12) (emphasis added). By comparison, § 522(d)(11)(B) provides in pertinent part as follows:

> (d) The following property may be exempted under subsection (b)(2) of this section ... (11) *The debtor's right to receive, or property that is traceable to—* ... (B) a pay-

ment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;....

11 U.S.C. § 522(d)(11)(B) (emphasis added).

3. The Court has reviewed prior versions of the Ohio exemption statute, effective at the time of Debtor's Wrongful Death Claim settlement. The prior versions of the statute are identical to the current statutory language. The wrongful death exemption was originally enacted into Oʜɪᴏ Rᴇᴠ.Cᴏᴅᴇ § 2329.66 via Am. Sub. H.B. 674, as an emergency act in response to the Bankruptcy Reform Act of 1978. *See 138 v. H.B. 674* (eff. 9/28/79) cited in the "History" section for the current statute.

annuity purchased with a wrongful death settlement is not a payment on account of wrongful death; but rather is an investment.

In contrast, Debtor asserts that she is entitled to exempt the Benefits pursuant to OHIO REV.CODE § 2329.66(A)(12)(b). In support of her position, Debtor asserts that she does not own or have control over the Annuity, and that the Annuity is to compensate her for her husband's lost wages and loss of consortium that she suffered. Debtor further asserts that the Benefits are reasonably necessary for her support.

## V. Analysis

At the outset of this analysis, the Court notes that while the parties stipulated to some facts, it has been exceedingly difficult to make a determination in this matter, because there was not enough evidence presented by either party regarding whether the Benefits are reasonably necessary for Debtor's support and maintenance. The Court, therefore, makes the following findings of fact and conclusions of law based upon the limited evidence presented by the parties.

### A. The Benefits from the Annuity are Exempt.

█ The Trustee bears the burden of proof regarding the disallowance of Debtor's claimed exemption. Fed. R. Bankr.P. 4003(c). The Trustee has conflated the Annuity and the Benefits. Nonetheless, the Trustee overcame his initial burden of production by illustrating that an annuity purchased in connection with the structured settlement constitutes an investment. *See Hollar*, 79 B.R. at 296. Upon the Trustee's rebuttal of the *prima facie* validity of Debtor's claimed exemption, the burden shifted to Debtor to demonstrate that the claimed exemption is proper. Accordingly, Debtor must demonstrate that

(1) the Benefits fall within the parameters of § 2329.66(A)(12)(b), and (2) if § 2329.66(A)(12)(b) is found to be applicable, the Benefits are reasonably necessary for the support of Debtor. *See Rhinebolt*, 131 B.R. at 976 (outlining debtor's standard of proof regarding the propriety of claimed exemptions).

There is little authority addressing the question of exemption of annuity benefits based upon wrongful death settlements. By their very nature, annuities are akin to an investment, or "a contractual right to receive fixed, periodic payments, either for life or for a term of years [or a] fixed sum payable to a person at specified intervals for a specific period of time or for life." *In re Andrews*, 301 B.R. 211, 214 (Bankr. N.D.Ohio 2003) (citations omitted). Some courts have distinguished between annuities established in connection with structured settlements to compensate for a loss or those similar to life insurance, and vehicles that more closely represent an account receivable or means of making installment payments on an underlying debt between a debtor and creditor pursuant to a settlement agreement. *Id.; Rhinebolt*, 131 B.R. at 976–78. If the structured settlement more closely "resembles an account receivable—a 'claim ... usually arising from sales or services rendered'—... [it creates] a debtor-creditor relationship with the insurance company agreeing to pay the debtor a sum of money over time." *Rhinebolt*, 131 B.R. at 976 (quoting and discussing *Young v. Adler*, 806 F.2d 1303 (5th Cir.1987) *overruled by In re Orso*, 283 F.3d 686 (5th Cir.2002)). Similarly, if the annuity was solely established to provide a method by which to fund the settlement of an underlying tort claim the claimed exemption should be disallowed. *See Rhinebolt*, 131 B.R. at 977. In contrast, annuities that compensate for a loss or that consist of the key attributes associated

with life insurance have fallen within the parameters of the Ohio exemption statute. *See Andrews,* 301 B.R. at 214–15.

Further, when reviewing claimed exemptions for wrongful death claims under other statutory provisions, courts have observed that there is an express provision under 11 U.S.C. § 522(d)(11)(B) for exemptions based upon wrongful death claims. *See In re Huscher,* 2004 WL 2671705, at *4 (Bankr.N.D.Iowa Nov. 19, 2004) ("Congress did not contemplate that payments arising from a wrongful death claim would be exempt under 11 U.S.C. § 522(d)(10)(E); it expressly provided an exemption for such payments under § 522(d)(11)(B)."). *See also In re Green,* 2007 WL 1031677, at *4–5, 2007 Bankr.LEXIS 1182, at *13–14 (citing *Huscher* on this point and noting that the state law statute under review in that case contained a specific exemption provision for wrongful death benefits).

At the end of the day, courts have concluded that "[e]xemption depends on the underlying nature of the asset." *See e.g., Huscher,* 2004 WL 2671705, at *2–3 ("The right to receive payments was not triggered by the event of [debtor's husband's death] as required under *In re Huebner*[, 986 F.2d 1222 (8th Cir.1993)]. It can be said that the annuity payments were triggered by the decision to settle the claim and invest in an annuity."). *See also Andrews,* 301 B.R. at 216. Looking to the underlying nature of the subject annuity, courts have also addressed the treatment of annuities in the context of a debtor's

claimed exemption under Ohio Rev.Code § 2329.66(A)(6)(b), which provides an exemption for annuities as set forth in Ohio Rev.Code § 3911.10.[4] Although those provisions are inapplicable to this case, a review of cases addressing the general treatment of annuities lends itself to the analysis of Debtor's claimed exemption.

First, in *Andrews,* the court discussed the interplay and reconciliation of Ohio Rev.Code § 3911.10 and 2329.66, comparing an annuity taken out to compensate for a loss to one taken out for investment purposes. The debtor in *Andrews* owned a deferred annuity, which was "created in 1989 for a stated retirement date in the year 2036." *Andrews,* 301 B.R. at 213. By its terms, the debtor was to make annual contributions to the annuity and would become entitled to certain minimum annual payments upon his retirement. The annuity contract also shielded, to the extent allowed by law, debtor's annual payments from the claims of creditors and legal process. The debtor designated how his annuity contributions would be invested subject to the choices offered by the insurance company that issued the annuity. In his chapter 7 bankruptcy case, the debtor claimed an exemption in his interest in the annuity under Ohio Rev.Code § 2329.66(A)(10). The trustee objected.

In its analysis, the court interpreted § 3911.10, as follows: "[T]he qualification of 'annuities' by the phrase 'upon the life of any person' demonstrates that this section was intended to exempt annuities that have the same function as life insurance."

---

4. Section 3911.10 provides in pertinent part that, "All ... annuities *upon the life of any person* ... which may hereafter *mature* and which have been *taken out for the benefit of,* ... *the spouse* or children, or any persons dependent upon such person, ... shall be held together with the proceeds or avails of such contracts ... free from all claims of creditors *of such insured person or annui-*

*tant."* Ohio Rev.Code § 3911.10 (emphasis added). Section 3911.10 is specifically referenced under Ohio Rev.Code § 2329.66(A)(6)(b), but not by § 2329.66(A)(12)(b). The Court's discussion of the authority examining Ohio Rev.Code § 3911.10 is solely for purposes of illustrating how annuities have been treated in Ohio.

*Andrews,* 301 B.R. at 215 (citing *In re Fichter,* 45 B.R. 534, 536 (Bankr.N.D.Ohio 1984)). The key question[5] for the *Andrews* court was whether the substance of the annuity contract or underlying transaction was to compensate for loss. If so, then the annuity proceeds would be protected by § 3911.10. If, however, the substance of the annuity transaction was an investment, then it would not qualify as exempt under § 3911.10. Based on that reasoning, the court concluded that the debtor's deferred annuity, which was created for retirement, was not exempt under the Ohio statute. *Id.* at 216.

In *Hollister,* the debtor attempted to exempt a distribution from his deceased father's annuity. *Hollister,* 09–34650, Doc. 82 at 10–11 (Bankr.S.D.Ohio Jan. 10, 2011). However, the benefits from the annuity were included in and were to be disbursed to the debtor through the administration of his mother's probate estate. Thus, the *Hollister* court found that the debtor was not the annuitant; his mother was. After examining the exemption provisions under OHIO REV.CODE §§ 2329.66(A)(6)(b) and 3911.10, the court noted that, "[t]he language of ORC § 3911.10 refers to the insured person's or annuitant's interest in the contract being free from the claims of the creditors, not the beneficiaries of the proceeds of that policy." *Id.* at 9 (citing *Menninger v. Schramm (In re Schramm),* 431 B.R. 397, 404 (6th Cir. BAP 2010); *In re Kudela,* 427 B.R. 643, 650 (Bankr. N.D.Ohio 2010); *Zurz v. Meyhew,* 2010 WL 4311255, at \*11 (Ohio Ct.App. Oct. 29, 2010)). Thus, the court denied the debtor's claim of exemption.

Finally, in *Rhinebolt,* the court disallowed the debtors' claimed exemption, under OHIO REV.CODE § 2329.66(A)(10)(b) and § 2329.66(A)(6)(b) · (coupled with § 3911.10), in an annuity which was part of a structured tort settlement agreement resolving a personal injury claim. *Rhinebolt,* 131 B.R. at 978. Rhinebolt owned the annuity. The Court concluded that the subject annuity appeared to be an annuity in name only and was actually more closely related to an account receivable. Expounding on its analysis and conclusion, the *Rhinebolt* court noted as follows:

> Labelling the arrangement between Rhinebolt and First Executive Corporation an "annuity" does not disclose the agreement's ***true substance;*** the Annuity was set up to fund the settlement of a lawsuit.... The debtors have failed to demonstrate the propriety of the claimed exemption.

*Id.* (emphasis added). This did not fit within the exemptions claimed by the debtor because § 2329.66(A)(6)(b) only authorizes exemption of an "interest in contracts of life or endowment insurance or annuities" on the life of a person taken out for the benefit of the insured's spouse, children or dependents, and § 2329.66(A)(10)(b) only authorizes exemption of a "right to receive a payment under any pension, annuity, or similar plan or contract ... on account of illness, disability, death, age, or length of service ..." that meet certain conditions. *See* OHIO REV.CODE §§ 2329.66(A)(6) and 2329.66(A)(10)(b).

This case can be distinguished from the factual circumstances in *Rhinebolt,* on three bases: First, the *Rhinebolt* debtor

---

**5.** The *Andrews* court also considered the following questions: (1) Whether the contract is actually in nature of life insurance; and (2) Whether upon the death of annuitant, beneficiaries will receive a significantly greater pecuniary benefit than what the policy would have otherwise been worth in the hands of the annuitant. Here, the answers to those questions are irrelevant because Debtor does not own the Annuity and there is no indication that any benefits go to her heirs in the event of her death.

claimed an exemption in the annuity pursuant to different statutory provisions— OHIO REV.CODE §§ 2329.66(A)(6) and 2329.66(A)(10)(b)—under which the funding of a tort settlement was not contemplated. On the other hand, OHIO REV. CODE § 2329.66(A)(12)(b), the basis for Debtor's claimed exemption, specifically provides for an exemption for payments on account of the wrongful death of an individual upon whom the debtor was a dependent. Second, in *Rhinebolt*, the debtor owned and retained a right of assignment of the annuity. Here, Debtor does not have any rights of ownership of the Annuity or rights to assign the Annuity or Benefits. Third, the true substance of the Annuity and the Benefits is to compensate Debtor for the loss of Mr. Abbott. It simply provides a mechanism for PHICO to satisfy its obligation to pay Debtor her damages. PHICO could as easily make payments directly to Debtor itself. By contrast, the *Rhinebolt* annuity "was set up simply to provide a method by which to fund the settlement of the [d]ebtor's tort lawsuit."

In his pleadings, the Trustee asserts that the Annuity is not a payment on account of the wrongful death; it is an investment. To support his position, the Trustee cites to several cases where a debtor's claimed exemption was denied. First, the Trustee cites *In re Green*, 2007 WL 1031677, 2007 Bankr.LEXIS 1182 (Bankr.E.D.Tenn. Apr. 2, 2007). In *Green*, the debtor claimed an exemption in payments due to him under the terms of an annuity that was established from a structured settlement of debtor's wrongful death claim for the death of his minor son. The debtor claimed an exemption under a Georgia statute that was modeled after the federal exemption provision in 11 U.S.C. § 522(d)(10)(E). That statute provides an exemption of certain benefits that are akin to future earnings of the debtor. The

*Green* court discussed several cases with similar factual circumstances. In the cited cases, the courts disallowed the debtors' claimed exemptions primarily because the debtors could not prove that the payments were a replacement of lost income or future earnings. Accordingly, the *Green* court sustained the trustee's objection and disallowed the debtor's claimed exemption on the same basis.

The Trustee also cites *In re Rigdon*, 133 B.R. 460 (Bankr.S.D.Ill.1991). In *Rigdon*, the issue was whether the debtors, who settled litigation in connection with the wrongful death of their fourteen-year-old son, could claim an exemption in an annuity purchased by the insurance company with the settlement proceeds. The key question was whether the debtors were dependents of their deceased son prior to his death. After analyzing the definition of "dependent" within the state law wrongful death and bankruptcy contexts, the court concluded that the debtors did not have the opportunity to present evidence as to whether they were dependent on their minor child and held the matter in abeyance for further hearing.

Finally, the Trustee cites *In re Stover*, 332 B.R. 400 (Bankr.W.D.Mo.2005). In *Stover*, the debtor claimed an exemption in monthly benefits payable from an annuity that his mother established with settlement proceeds she had received following the wrongful death of the debtor's father. The debtor and his brother were named as beneficiaries of the annuity. Upon his mother's death, the debtor began to receive monthly payments under the annuity. The focus of the court's examination was whether the debtor was entitled to an exemption in the annuity payments because they were derived from an annuity on account of his father's wrongful death. Pursuant to an analysis of a Missouri statute that is "virtually identical to the ex-

emption found in § 522(d)(10)(E) of the federal exemption scheme," the court concluded that the annuity was akin to an inheritance received in the form of an annuity and could not be exempted. *Id.* at 403.

In sum, the focus of the body of cases cited by the Trustee revolved around situations where the debtor claimed an exemption in wrongful death settlement proceeds under state statutes similar or identical to § 522(d)(10)(E), or whether the debtor was a dependent of the individual who died, resulting in a wrongful death claim. In the instant case, it is undisputed that Debtor was a dependent of Mr. Abbott at the time of his death; she was a 24 year-old, stay-at-home mother with three young children. Debtor neither purchased the Annuity with the wrongful death settlement nor was it bequeathed to her. *See Green,* 2007 WL 1031677, at *3–4, 2007 Bankr.LEXIS 1182, at *9–11; *Stover,* 332 B.R. at 403. PHICO purchased the Annuity as a means to meet its liability to Debtor. Moreover, Debtor's claimed exemption is pursuant to the Ohio wrongful death exemption statute. Hence, the Trustee's reliance on those cases is misplaced.

■■ This Court concludes that annuities or benefits therefrom can be exempt when they are in the nature of life insurance or to actually compensate for loss, rather than purchased as an investment vehicle. In the instant case, the Annuity is owned by and subject to the control of PHICO. The Verification of Benefit states that the Annuity is owned by the hospital, the ownership rights reside with the hospital, and payments cannot be accelerated. Debtor has no ownership or control over the Annuity or control over payment of the Benefits. *See Huscher,* 2004 WL 2671705,

at *2–3 (generally discussing the significance of debtor control over or access to the corpus of the annuity); *Eilbert v. Pelican (In re Eilbert),* 212 B.R. 954, 958 (8th Cir. BAP 1997), *aff'd,* 162 F.3d 523 (8th Cir.1998) (noting debtor's control over the corpus and discretion relating to payment terms and distribution at the time debtor purchased annuity as one basis for disallowing debtor's claimed exemption). Therefore, the Annuity is not subject to the reach of the Trustee.

■ However, the right to receive the Benefits is property of the estate unless eligible to be claimed exempt, and in this case, Debtor may claim the Benefits exempt. The Benefits are compensation to Debtor for the loss of her husband. Although the Court does not have the benefit of perusing the settlement agreement and Annuity contract inasmuch as they are not in evidence, the Court finds that this was the true substance of the Benefits payable by the Annuity.

Accordingly, this Court concludes that the Annuity was established by PHICO as a vehicle to meet its settlement obligations to Debtor—to compensate her for the loss of her husband. Debtor's interest is solely in the Benefits. Given that the Annuity is owned by PHICO, Debtor need not and cannot claim the Annuity exempt. The Benefits, however, constitute damages that Debtor has a "right to receive ... from ... [a] payment on account of the wrongful death of [Mr. Abbott] of whom [she] was a dependent on the date of [Mr. Abbott's] death, to the extent reasonably necessary for the support of [Debtor] and any of [Debtor's] dependents." OHIO REV.CODE § 2329.66(A)(12)(b). The Benefits, therefore, fall under the wrongful death exemption provision pursuant to OHIO REV.CODE § 2329.66(A)(12)(b).[6]

---

**6.** The Court notes, however, that its decision would be different if Debtor owned the Annui-

## B. The Benefits are in Part Reasonably Necessary for Support of Debtor.

■ Because the Court has determined that the Benefits fall within the parameters of OHIO REV.CODE § 2329.66(A)(12)(b), the Court will examine whether the Benefits are reasonably necessary for Debtor's support. The following factors have been considered for the purposes of making this determination under the Ohio exemption provisions:

(1) The debtor's present and anticipated living expenses;

(2) The debtor's present and anticipated income from all sources;

(3) The age of the debtor;

(4) The health of the debtor;

(5) The debtor's ability to work and earn a living;

(6) The debtor's job skills, training and education;

(7) The debtor's other assets;

(8) Liquidity of other assets;

(9) The debtor's ability to save for retirement;

(10) Special needs of the debtor; and

(11) The debtor's financial obligations (e.g., alimony or support).

*Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 723 (6th Cir. BAP 1999) (citing *In re Parker*, 219 B.R. 972, 975 (Bankr.S.D.Ohio 1998)).

■ When outlining the above-listed eleven factors, the Bankruptcy Appellate Panel in *Hamo* noted that, "A bankruptcy court's analysis is not restricted to these factors, nor is a bankruptcy court required to specifically discuss each factor in every case. However, these factors are appropriate for a trial court's consideration in its analysis of the totality of the facts and circumstances of each case." *Hamo*, 233

ty, making it more akin to an investment.

B.R. at 723. Moreover, "the standard for determining to what extent [the Annuity] benefits are reasonably necessary for the debtor's support is not whether [s]he has sufficient funds to sustain [her] former lifestyle, but whether [s]he has enough to sustain [her] present and future needs, taking into account any special needs of the particular debtor." *See id.* (citations omitted).

The Court has found that the Benefits are eligible for exemption. The Court must now analyze the debtor's particular circumstances. *See Parker*, 219 B.R. at 975 ("Any determination of what is reasonably necessary for the support of a debtor must be made on a case by case basis."). While the *Hamo* court dealt with a claimed exemption in an IRA, the factors for determining necessity which were utilized by the *Hamo* court are applicable to this case. *See Hamo*, 233 B.R. at 723 ("Bankruptcy courts uniformly consider eleven factors in making the determination of the amount of the retirement funds necessary to sustain a debtor's needs...."); *Guikema*, 329 B.R. at 621 (applying the *Hamo* factors to a claimed exemption in a retirement annuity) (citing *In re Conkle*, 275 B.R. 530, 531 (Bankr.S.D.Ohio 2002) (applying the *Hamo* factors to determine that the debtors' annuity was not reasonably necessary for their support.)). *But see In re Roselle* 274 B.R. 486, 489–91 (Bankr.S.D.Ohio 2002) (applying the *Hamo* factors to a claimed exemption in monthly disability insurance payments).

■ Accordingly, the Court will apply the *Hamo* eleven-factor test to Debtor's circumstances.

(1) *The debtor's present and anticipated living expenses.*

Having reviewed Debtor's 2004 Examination testimony and Debtor's Amended

Schedule J, the Court finds Debtor's monthly expenses to be reasonable. Debtor pays rent of $750.00 per month.[7] Debtor's other monthly expenses include $330.00 in utilities, cable, internet and telephone; $75.00 for food; $100.00 for clothing, laundry and dry cleaning; $80.00 in medical and dental expenses; $200.00 for transportation; $50.00 for recreational expenses; approximately $72.00 in auto and renter's insurance; approximately $360.00 for her car payment; $57.00 for rent-to-own furniture; $35.00 for pet care; $170.00 for hair and nail maintenance; $400.00 in additional transportation costs to visit her ailing mother in Pennsylvania; and $58.33 toward her annual medical insurance deductible. In sum, Debtor's average monthly expenses total $2,736.68.

On balance[8] and in the face of no evidence to the contrary, the Court finds Debtor's expenses listed in her Schedule J to be reasonable. Thus, the Trustee has failed to carry his burden to present evidence that Debtor's monthly expenses are not reasonable.

(2) *The debtor's present and anticipated income from all sources.*

In her current position, Debtor earns $8.74 per hour, with estimated monthly overtime pay of $12.63, yielding gross monthly earnings of $1,762.21. From this is taken $531.08 in payroll deductions including payroll taxes, social security, insurance, and cafeteria and Genesis Fitness plans in reasonable amounts. Including the $2,000.00 monthly Benefit payments from the Annuity, Debtor's average monthly income after payroll deductions is $3,231.13. There was no evidence presented to indicate that Debtor's income would substantially increase in the future.

Based upon Debtor's testimony, it does not appear that she could rely on family members for supplemental income or support. Debtor is estranged from her three children, has an ailing, elderly mother that lives in Pennsylvania and does not have a close relationship with her siblings. While Debtor has been married multiple times, she is currently divorced.

Debtor's monthly income, including the $2,000.00 Annuity payment, exceeds her monthly expenses by $494.45.

(3) *The age of the debtor.*

Debtor is 52 years old. While Debtor is not on the threshold of retirement, she has a limited capability to save for retirement before reaching age 67[9] given her income and physical condition. *See Guikema,* 329 B.R. at 621 (holding, however, that the debtors' annuity in that case was not reasonable for their support, because of the debtors' ability to reduce housing expenses, which would enable them to save for retirement, no evidence of health problems or other special needs).

---

7. Debtor's Amended Schedule J (Doc. 32 at 9) indicates that her monthly rental expense is $800.00; however, Debtor testified during the 2004 Examination that this expense is $750.00 monthly.

8. The expenses for hair and nail care may be viewed as somewhat excessive, however, Schedule I included only $75.00 for Debtor's monthly food budget, a nominal amount. Although Debtor did not testify at the Hearing, she was present, and the Court observed that she was well groomed. Therefore, it is not unreasonable to assume that the line item for hair and nail care expense includes other personal care and household expenses too.

9. Pursuant to the U.S. Social Security Administration ("SSA") retirement age calculator, Debtor's full retirement age is 66 years and 8 months. Social Security Administration, http://www.socialsecurity.gov/pubs/ ageincrease.htm (last visited Feb. 21, 2012).

(4) *The health of the debtor.*

Debtor is in decent health and physical condition, but has been diagnosed with Tendonitis in both arms and a bad foot. Currently, Debtor is attempting to treat her foot condition with customized orthotics, because she cannot afford surgery. There is no evidence regarding the cost of the surgery to treat Debtor's bad foot, or the cost, if any, to treat the Tendonitis in both of her arms.[10] Nor is there any evidence regarding Debtor's plans to undergo surgery. After application of insurance coverage, the orthotics cost $383.16, which appears to be a one-time expense. At the time of the 2004 Examination, Debtor also had an immediate medical need for eyeglasses at a cost $300. No evidence was presented regarding whether or how much of these expenses are covered by insurance. The Court notes, however, the Schedule I includes a payroll deduction for health insurance. Therefore, in the absence of evidence, the Court can only assume that insurance and the monthly deductible included on Schedule I cover Debtor's medical needs.

(5) *The debtor's ability to work and earn a living.*

Debtor is currently employed by and has been working full-time with Genesis HealthCare System since June 2009. A change in her employment, positively or negatively, is always a possibility, but she is not aware of any impending changes in her employment. Although Debtor has several years of experience working in hospitals, nursing homes, and assisted living facilities, she can no longer work in physically demanding nursing aide positions given her medical conditions.

Debtor has, however, been able to continue working in the medical field in a clerical position since December 2009 and was promoted in early November 2010, given her experience, education and work history. Neither Debtor's move to a clerical position nor her promotion yielded any increases to her hourly pay rate.

Based upon the evidence, it appears that Debtor is capable of continuing to work in a clerical or administrative capacity, potentially with Genesis HealthCare System, until she retires. But, Debtor is not likely to receive any substantial income increases.

(6) *The debtor's job skills, training and education.*

While Debtor is a high school graduate, she has no education and training beyond the twelfth grade, with the exception of a two-week vocational CNA certificate. Since her promotion, Debtor has received some training in Electronic Medical Records. Yet, it does not appear that the additional training has or will positively impact her income.

(7) *The debtor's other assets.*

Debtor owns an automobile, but owns no other significant assets. In conjunction with her bankruptcy filing, Debtor surrendered her interest in two mortgaged parcels of real estate, including her prior principal residence and a rental property. Since the Petition Date, the Trustee has abandoned Debtor's prior principal residence located at 1655 Nob Hill Road, Zanesville, Ohio 43701 ("Nob Hill Property") (Doc. 38), and The Bank of New York Mellon was granted relief from stay by an order of this Court entered on October 18, 2010 (Doc. 39). Similarly, on August 24,

---

**10.** During the 2004 Examination, Debtor's attorney made representations regarding Debtor's health and physical condition, but there was no evidence submitted relating to same. Therefore, the Court cannot consider the representations.

2010, Wells Fargo Bank, NA, was granted relief from stay relating to Debtor's rental property located at 634 Taylor Street, Zanesville, Ohio 43701 ("Taylor Street Property") (Doc. 15). There was no equity in the Nob Hill Property and nominal equity in the Taylor Street Property at the time relief from stay was granted to the respective creditors.

(8) *Liquidity of other assets.*

Debtor has no liquid assets over and above her exemptions.

(9) *The debtor's ability to save for retirement.*

Debtor has established that she has no retirement savings. The Court takes judicial notice of the 2012 U.S. Census Bureau, Statistical Abstract of the United States, which projects that a Black female of Debtor's age has a life expectancy of 81 years, approximately 29 more years.

There was no evidence put forth regarding Debtor's expectation of any Social Security benefits once she retires. Presumably, Debtor is entitled to Social Security benefits as a wage earner. However, there was no evidence presented by either party regarding the amount of Social Security benefits to which the Debtor is entitled, if any, and the Court has insufficient information to determine same. As such, the Court has no alternative but to allocate nothing for Debtor's Social Security entitlement.

It appears, however, that Debtor will continue to receive monthly Benefits of $2,000.00. Although counsel for the parties represented that the $2,000.00 monthly Benefits will cease on October 29, 2014, the Verification of Benefit states that Debtor is entitled to the monthly Benefits, "through October 29, 2014 **and life thereafter.**" (Emphasis added). There is no evidence to negate this language in the Verification of Benefit. Therefore, the Court interprets the Verification of Benefit to state that Debtor is entitled to the $2,000.00 monthly Benefits for the remainder of her life.

The Court calculates Debtor's post-retirement monthly expenses at approximately $2,336.00,[11] which results in a monthly shortfall of $336.00. Thus, the monthly Benefits will be critical to Debtor's anticipated future needs in retirement. *See In re Bogart,* 157 B.R. 345, 347 (Bankr.N.D.Ohio 1993). Calculating Debtor's total monthly shortfall from age 67 to age 81, results in a total post-retirement shortfall of $56,448.00.

Prospectively, given Debtor's low income, she has no other means to save for retirement other than the Benefits she receives from the Annuity. But the lump sum Benefit that Debtor will receive in October 2014 will meet this shortfall. Thus, the Court concludes that the Benefits to the extent of $56,448.00 of the lump sum payable on October 29, 2014, are reasonably necessary to Debtor's ability to save for retirement. The lump sum being available to assist Debtor, Debtor does not need to save her monthly excess income of $494.45 for retirement.[12]

**11.** Given the age of Debtor's mother, the Court assumes that the $400.00 in monthly transportation expenses would eventually cease, resulting in a total overall reduction of Debtor's monthly expenses from $2,736.00 to $2,336.00. While it would be reasonable to assume that costs of living will increase, the parties presented no evidence on this point, or provided the Court with any information for the Court to undertake such a calculation.

**12.** Debtor projects that she will need to save $817.00 per month to retire at age 65. The support for Debtor's projections, however, is merely a generalized retirement analysis from Symetra Financial, dated October 12, 2010.

(10) *Special needs of the debtor.*

Debtor has no apparent special needs.

(11) *The debtor's financial obligations (e.g., alimony or support).*

Debtor has no dependent, spousal or parental financial obligations. She has no dependents, as her three children are grown and self-supporting. Moreover, Debtor does not make any alimony or support payments. Debtor's transportation expenses to visit and care for her ailing mother are included in her monthly budget. Otherwise, Debtor has no other financial obligations relating to her mother and there is no evidence that this will change or increase in future years.

After considering the totality of Debtor's circumstances pursuant to the *Hamo* eleven-factor test, the Court concludes that the monthly Benefits to the extent of $1,505.55 until she retires, and in the full amount after retirement are reasonably necessary for Debtor's present and future support. Additionally, the lump sum Benefit to the extent of $56,448.00 is reasonably necessary for Debtor's future support. As a result, the Court finds that the Trustee has not carried his burden of proof to establish that the Benefits, in their entirety, are not reasonably necessary for Debtor's support.

 Finally, the Trustee is seeking *present* turnover of the $200,000.00 lump sum Benefit, as well as monthly Benefits. Section 542(a), mandates turnover of property over which a debtor has "possession, custody or control." 11 U.S.C. § 542(a). In light of the conditions set forth in the Verification of Benefit, the Court cannot conclude that Debtor has possession, cus-tody or control over either the forthcoming $2,000.00 monthly Benefits or the $200,000.00 lump sum Benefit to be paid on October 29, 2014. Thus, the remaining $143,552.00 from the lump sum Benefit plus Debtor's monthly excess income of $494.45 from the Petition Date to her date of retirement is subject to turnover to the Trustee, as and when received.

## VI. Conclusion

For the foregoing reasons, it is, therefore,

**ORDERED** and **ADJUDGED** that the Trustee's Objection to Exemption is **OVERRULED IN PART** and **SUSTAINED IN PART,** and Debtor's exemption in the Benefits is allowed to the extent of (a) $1,505.55 of Benefits paid monthly, from June 23, 2010 until the month prior to the month in which Debtor retires, and (b) $56,448.00 of the lump sum Benefit payable from the Annuity on October 29, 2014. It is further

**ORDERED** and **ADJUDGED** that the Trustee's Amended and Supplemental Motion for Turnover of Property of the Estate is **DENIED IN PART** and **GRANTED IN PART,** and Debtor shall turnover to the Trustee the sum of (a) $494.45 per month from June 23, 2010 until the month prior to the month in which Debtor retires, as and when received, and (b) $143,552.00 upon receipt of the lump sum Benefit payable from the Annuity on or about October 29, 2014.

**IT IS SO ORDERED.**

(Doc. 53, Ex. C.) The document contains no specific analysis of Debtor's circumstances and financial situation. Further, the document was merely attached to Debtor's response to the Trustee's Amended Turnover Motion and Exemption Objection, and was not admitted into evidence at the hearing (nor was any other evidence submitted regarding same). As such, the Court cannot properly consider those projections.