**In re TRANSPACIFIC CARRIERS CORPORATION, Hellenic Lines Limited, Universal Cargo Carriers, Inc., Hellenic American Agencies, Inc., Debtors.**

No. 88 Civ. 2550 (TPG).
Nos. 83 B 11775 (BRL)–83 B 11778 (BRL).

United States District Court,
S.D. New York.

Sept. 12, 1990.

Henry Petsis, Fresh Meadows, N.Y., pro se.

Alexander Rokas, Staten Island, N.Y., pro se.

Scherling, Davidson & Rech, P.C., New York City, for respondent.

---

## OPINION

GRIESA, District Judge.

In this bankruptcy appeal under 28 U.S.C. § 158(a), certain former employees of two of the debtors, appearing *pro se*, seek to reverse a ruling of the bankruptcy court expunging their claims to surplus pension funds.

The ruling of the bankruptcy court is affirmed.

## FACTS

Appellee Bruce D. Scherling is the trustee in bankruptcy for Hellenic Lines Limited and three affiliated entities. This appeal concerns the disposition of surplus funds from pension plans of debtors Hellenic Lines, a Greek shipping corporation, and its American subsidiary Hellenic American Agencies, Inc. It does not involve the other two affiliated debtors, Universal Cargo Carriers, Inc. and Transpacific Carriers Corporation.

Appellants Harry Petsis and Alexander Rokas are former employees of Hellenic Lines and American Agencies who accrued benefits in the pension plans of those firms prior to bankruptcy.

On December 12, 1983 Hellenic Lines and American Agencies filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. On March 16, 1984 after chances for a successful reorganization had faded, the bankruptcy court converted each petition to one for liquidation under Chapter 7 of the Code. On March 19, 1990 the bankruptcy court appointed Scherling as trustee for both debtors.

Prior to the bankruptcy proceedings, Hellenic Lines and American Agencies had established identical single-employer pension plans. These plans were funded exclusively by the employers, and did not involve voluntary or mandatory employee contributions. With respect to termination, the plans stipulated:

> If this Plan and Trust shall be terminated or be partially terminated, each Participant ... shall be 100% vested in his Accrued Benefit to the extent funded.... The Trustee shall execute all necessary papers so that such vested amount and any other asset to which he is entitled shall become the property of a person for whose benefit they were held, free and clear of this Trust. *Any excess held by the Trustee after satisfying such vested amounts*, all other conditions of this Section 13 and any other liabilities under this Trust, both fixed and contingent, *at the direction of the Employer, shall either be returned to the Employer or distributed to Participants*, each receiving a share bearing the ratio to the total of such excess as the present value of his Accrued Benefit bears to the total present value of the Accrued Benefits of all Participants. (emphasis added).

By order dated May 15, 1984 the bankruptcy court appointed Joel Lewittes, a former bankruptcy judge, to represent the plans' participants as an independent trustee. Lewittes immediately set about the business of terminating the plans and allocating accrued benefits to participants. He arranged for lump sum cash payments of benefits to be paid to each participant in or about March 1986. After these disbursements, the plans had a combined surplus of approximately $700,000 which Lewittes turned over to the trustee in bankruptcy.

On March 30, 1987 appellants filed identical proofs of claim in the bankruptcy court for shares in the $700,000 surplus pension funds. Recognizing that, by their terms, the plans give the employer a choice of reclaiming funds or distributing them to the participants, the two claimants urged that the choice should be exercised by the court in favor of the participants because the deceased owner of Hellenic Lines and its affiliates had a generous attitude to his employees. In later submissions to the bankruptcy court, the claimants alleged that the employees were continually persuaded to accept less in the way of salaries on the understanding that generous pension contributions would be made.

On February 3, 1988 the trustee in bankruptcy moved to expunge these claims. This motion was granted by the bankruptcy court on March 4, 1988.

**22**

Although Petsis and Rokas promptly appealed on April 11, 1988, the appeal was not fully submitted until August 15, 1990.

## DISCUSSION

The current version of ERISA deals with the distribution of funds in a single-employer pension plan upon the plan's termination. 29 U.S.C. § 1344. However, this provision was added in 1987 and does not apply to the present case.

Here, the matter of distribution of surplus pension funds is governed by the plan, which gives the employer the option of retaining such funds or distributing them to the participants. By the time the plans were terminated, the employers were in bankruptcy. An independent trustee was appointed by the bankruptcy court to deal with the matter of distributions under the plan. He determined that the surplus funds should be turned over to the trustee in bankruptcy, which was the action in the bankruptcy setting most closely approximating turning the funds over to the employer. This decision was approved by the bankruptcy court.

There was no error in the action of the independent trustee or the bankruptcy court. No factor cited by appellants, including the alleged generous attitude of the former employer regarding pensions, detracts from the express language of the plan giving the employer the free choice of reclaiming surplus funds or distributing them to participants. The action of the independent trustee, approved by the bankruptcy court, amounted to a proper exercise of that choice.

The ruling of the bankruptcy court is therefore affirmed.

SO ORDERED.