**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )    BAP No.   EC-16-1196-TaBJu
                                    )
SCOTT CHARLES POMEROY,              )    Bk. No.   15-26465
                                    )
                Debtor.             )
_____)
                                    )
JOHN R. ROBERTS, Chapter 7          )
Trustee,                            )
                                    )
                Appellant,          )
                                    )
v.                                  )    **MEMORANDUM**[*]
                                    )
SCOTT CHARLES POMEROY,              )
                                    )
                Appellee.           )
_____)

Argued and Submitted on March 23, 2017
at Sacramento, California

Filed – April 24, 2017

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

_____

Appearances:    Gregory Joseph Hughes of Hughes Law Corporation
                argued for appellant; Lucas B. Garcia of The Law
                Office of Luke Garcia argued for appellee.

_____

Before:   TAYLOR, BRAND, and JURY, Bankruptcy Judges.

_____

[*]    This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

## INTRODUCTION

Chapter 7[1] debtor Scott Pomeroy's tax-exempt retirement plan holds approximately $400,000 in assets, including a vacant lot. After filing a chapter 7 petition, he claimed the entire value in the plan as exempt. The chapter 7 trustee objected. The bankruptcy court overruled the exemption objection and concluded that Debtor could exempt the full amount of the Plan under both federal and state law. On appeal, the Trustee argues that the court erred in both respects. We find that the bankruptcy court did not err in overruling the objection to the state law exemption.

We AFFIRM the bankruptcy court.

## FACTS

**Debtor's bankruptcy petition.** Debtor filed a voluntary chapter 7 petition in August 2015. On Schedule B, he listed the "Pomeroy Retirement Trust" (the "Plan") and disclosed that it included: (1) property in Truckee, California valued at $185,000 (the "Property"); (2) a Wells Fargo deposit account with balance of $170,780.74; and (3) a Scottrade account valued at $53,602.27. He claimed the full amount as exempt on Schedule C under California Code of Civil Procedure ("CCP") § 703.140(b)(10)(E).

On Schedule I, Debtor reported that he was a "Chip Runner/Dealer" at a casino, where he made $2,130.44 per month in gross income; he reported his take-home pay as $1,563.90. He

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

also reported an additional $1,800 per month in income from "[c]ontributions from room mate". His combined monthly income, thus, was $3,363.90. Debtor's Schedule J expenses totaled $3,715 per month, resulting in a monthly net income of -$351.10. He noted: "Girlfiend [sic] helps with living expenses on some rare occations [sic] when she can but is not responsible for any of the bills".

**The Trustee objects to Debtor's exemption**. In February 2016, the Trustee timely objected to Debtor's exemption of the Plan under CCP § 703.140(b)(10)(E).

In response, Debtor amended Schedule C. He now claimed the Plan exempt under CCP § 703.140(b)(10)(E) for $409,383.01 of the $409,383.01 value and § 522(b)(3)(C) for 100% of the value.

The Trustee then timely filed an amended objection to include the § 522(b)(3)(C) exemption claim. The Trustee argued, in part, that Debtor's Schedule I was inaccurate: Debtor was receiving "off the books" quarterly payments of more than $2,000, directed towards repayment of a loan from Plan assets; at the § 341(a) meeting, Debtor acknowledged the loan was made with Plan assets, but admitted that the repayments went to his personal bank account.

Debtor opposed. He provided supporting declarations from: Ben Eastman, who advised Debtor about the Plan; David M. Kahn, an attorney; and himself.

Debtor declared, among other things: First, he hired Ben Eastman to create the Plan in 1994 and has used him for advice and as the Plan administrator ever since. Second, due "to a divorce in 2009," he "had to make changes to [his] retirement

3

plan provisions." Third, his "live in girl friend" contributed $1,800 per month to help with the household expenses, "which are all in [his] name." Accordingly, he "cannot hold her to this contribution and in fact she lost her job in February and I am right now relying on her contribution of her unemployment claim to keep the expenses going." And if "she leaves, and we have had our rough patches and neither of us foresees marriage, I would be reduced to living in the cargo van trailer or purchasing another Recreational Vehicle to continue my dwelling needs." Fourth, he is "56 years old with a future employment duration of perhaps 10 years until retirement." In particular, he has "been treated for nervousness and anxiety disorders and could have to take retirement early." If he does, he "calculated that [he] would receive $2200 per month maximum from Social Security" and had no other retirement funds.

Debtor also sought to explain the $2,000 quarterly payments. He said that, on Mr. Eastman's advice, he decided to treat the repayments as a hardship distribution and correspondingly would amend three years of tax filings: "I was informed about my alternative option to take it as a participant loan and have determined that the hardship distribution will better serve the retirement trust and myself in the long run."

The Trustee replied.

The court heard the matter and entertained oral argument. Hr'g Tr. (May 4, 2016).[2] It then continued the matter to allow

_____

[2] The bankruptcy court had apparently issued a tentative ruling in advance of the hearing. See Hr'g Tr. (May 4, 2016)
(continued...)

4

Debtor to supplement the record. Debtor did so, and the Trustee again replied. After another hearing, the bankruptcy court took the matter under submission.[3]

The next week, the bankruptcy court issued its memorandum decision, discussed in more depth below, overruling the Trustee's objection and allowing the exemption in its entirety under CCP § 703.140(b)(10)(E) and § 522(b)(3)(C). Memorandum Decision, June 21, 2016 ("Mem. Dec."). That same day, the court entered its order overruling the Trustee's objection.

The Trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in overruling the Trustee's objection and upholding Debtor's claimed exemption in the Plan.

## STANDARD OF REVIEW

We review de novo a debtor's right to claim an exemption.

---

[2](...continued)
14:5-9 ("[W]hat I anticipate doing is giving the debtor an opportunity to supplement the record, to address what I have raised in the tentative, and I will continue it; and in all likelihood, I will also address the 703 issue."). The parties did not provide us with a copy.

[3] Again, the bankruptcy court issued a tentative ruling in advance of the hearing. See Hr'g Tr. (June 15, 2016) 3:13-14 (The Court: "The court has issued a lengthy tentative."). Again, the parties did not provide us with a copy.

5

Kelley v. Locke (In re Kelley), 300 B.R. 11, 16 (9th Cir. BAP 2003). We review the bankruptcy court's factual findings for clear error. Id.; Gonzalez v. Davis (In re Davis), 323 B.R. 732, 734 (9th Cir. BAP 2005) ("The court's findings regarding the necessity of retirement accounts for debtor's support are reviewed for clear error."). A factual finding is clearly erroneous if illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

"When a debtor files a Chapter 7 bankruptcy petition, all of the debtor's assets become property of the bankruptcy estate, see 11 U.S.C. § 541, subject to the debtor's right to reclaim certain property as 'exempt,' § 522(l)." Schwab v. Reilly, 560 U.S. 770, 774 (2010). Unless a party in interest objects, a debtor's claimed exemption "is exempt." 11 U.S.C. § 522(l).

We start by clarifying the scope of the appeal: it exclusively concerns the Property. Debtor claimed the entire Plan, comprised of three assets (the Property and two accounts), as exempt. The bankruptcy court concluded that the entire retirement plan was exempt under § 522(b)(3)(C) and CCP § 703.140(b)(10)(E). The Trustee does not dispute the Scottrade or Wells Fargo exemptions. See Appellant's Reply Br. at 1 ("Although Trustee sought in the bankruptcy court to disallow all of Debtor's Plan Assets . . ., Trustee is focusing his appeal solely on the Truckee Lot."). Accordingly, this appeal

6

turns on whether the Property may be exempted under either statute: First, is the value the Property brings to the Plan reasonably necessary for Debtor's support under CCP § 703.140(b)(3)? Second, is the term "retirement funds" in § 522(b)(3)(C) broad enough to include real property?[4] Because we conclude that the bankruptcy court properly upheld the CCP § 703.140(b)(10)(E) exemption, we decline to reach the § 522(b)(3)(C) issue.

### A. The bankruptcy court correctly determined that the Plan, and thus the Property, was exempt under CCP § 703.140(b)(10)(E).

California's bankruptcy exemption statute allows a debtor to exempt the "debtor's right to receive" "[a] payment under a stock bonus, pension, profitsharing, annuity or similar plan or contract on account of . . . age . . . to the extent reasonably necessary for the support of the debtor . . . unless all of the following" three conditions apply. The bankruptcy court determined, and the Trustee does not challenge, that the Plan was on account of Debtor's age and that at least one of the

---

[4] Debtor contends that the Trustee's failure to challenge the bankruptcy court's determination that § 522(b)(4) applied is a separate basis for affirmance. We disagree. Section 522(b)(4) is not a separate exemption; it discusses further parameters for § 522(b)(3)(C) and (d)(12). 11 U.S.C. § 522(b)(4) ("For purposes of paragraph (3)(C) and subsection (d)(12), the following shall apply . . . ."). It allocates presumptions for determining if an account is tax-exempt, § 522(b)(4)(A), (b)(4)(B), addresses transfers between tax-exempt accounts, § 522(b)(4)(C), and discusses distributions that qualify as rollover distributions, § 522(b)(4)(D). The Trustee does not argue the Plan's tax-exempt status on appeal. Instead, the Trustee's argument is that the Property does not qualify as "retirement funds."

three conditions was not present.

On appeal, the Trustee focuses on the "to the extent reasonably necessary for the support of the debtor" prong; he argues the bankruptcy court erred because it: (1) applied the wrong legal standard; (2) misapplied the standard; and (3) lacked sufficient evidence to make its factual findings. We disagree and consider each in turn.

### 1. The bankruptcy court applied the correct legal standard.

In its decision, the bankruptcy court decided that it "will consider whether the Plan is reasonably necessary for the debtor's support based on what his income and expenses are likely to be in retirement and based on what changes are likely to take place between now and then." Mem. Dec. at 8.

On appeal, the Trustee argues that the bankruptcy court applied the wrong legal standard: "The standard is whether the asset is 'reasonably necessary for support,' not whether the asset is 'reasonably necessary for the debtor's support when he retires.'" Appellant's Opening Br. at 16. He contends that the factors listed in Moffat v. Habberbush (In re Moffat), 119 B.R. 201 (9th Cir. BAP 1990), aff'd 959 F.2d 740 (9th Cir. 1992), and Hamo v. Wilson (In re Hamo), 233 B.R. 718 (6th Cir. BAP 1999), all focus on a debtor's present needs, not needs some twenty years in the future. He asserts that none of the listed factors include support during retirement. Also, had Congress or the California legislature "wanted to connect assets in a retirement plan with support during retirement," they could have mentioned "the word 'retirement' in connection with support needs . . . ."

8

*Id.* at 19.  Next, he suggests that the bankruptcy court improperly inserted "retirement needs" into the required evaluation of what is "reasonably necessary for the support of the debtor"; he contends that none of the other CCP § 703.140 exemptions involving "reasonably necessary for the support of the debtor" language involve retirement plans or retirement needs, so neither should CCP § 703.140(b)(10)(E).  *Id.* at 20.

The Trustee misses the point.  The statute exempts Debtor's right to receive payments to the extent those payments are reasonably necessary for Debtor's support.  Here, the Trustee concedes that Debtor will not receive penalty-free payments until he retires.[5]  The relevant inquiry is, thus, whether those payments (when Debtor retires) will be reasonably necessary for Debtor's support.  When evaluating the "reasonably necessary" part, courts look to a variety of factors:

> the debtor's present and anticipated living expenses and income; the age and health of the debtor and his or her dependents; the debtor's ability to work and earn a living; the debtor's training, job skills and education; the debtor's other assets and their liquidity; the debtor's ability to save for retirement; and any special needs of the debtor and his or her dependents.

*In re Moffat*, 119 B.R. at 206.

The Trustee's arguments are not persuasive.  First, the *Moffat* factors are discretionary and, what's more, direct the bankruptcy court to consider anticipated (i.e., future and

---

[5]  Of course, Debtor may elect to take hardship distributions early, as he already has.  The bankruptcy court determined that "the debtor's right to receive payments under the Plan without penalty, will, absent a hardship, arise at retirement age."  Mem. Dec. at 8.

9

forward-looking) expenses and income. Second, neither Congress nor the California legislature inserted "retirement" in "reasonably necessary for the support the debtor" because CCP § 703.140(b)(10)(E) also protects the right to receive payments on account of more than just age; it also includes payments on account of disability, death, or length of service. As the bankruptcy court put it, the Trustee's analysis ignores "the nature of the asset exempted by the particular statute . . . ." Mem. Dec. at 7. True, "the statute contains the same 'reasonably necessary' language as those [statutes] exempting alimony, payments in compensation of lost earnings, and so on," but the "statutes must be considered in light of the" statute's purpose "and the asset being exempted—here, the right to receive retirement income." Mem. Dec. at 8.

Accordingly, we conclude that the bankruptcy court did not apply the wrong legal standard.

### 2. The bankruptcy court did not misapply the legal standard.

Next, the Trustee argues that the bankruptcy court abused its discretion because it misapplied the proper legal standard: it did not separately consider whether "each of the assets was or was not necessary for support, in light of the treatment of the other assets." Appellant's Opening Br. at 21-23. The Trustee focuses on the "to the extent" part of the statute: "where there are three plan assets . . ., the proper analysis under [CCP] § 703.140(d)(10)(E) would have required the court to analyze whether each of the assets was or was not necessary for support, in light of the treatment of the other assets." Id.

10

at 21.  If the Wells Fargo and Scottrade Accounts are enough on their own, he urges, then the Property cannot be exempted.

We disagree.  First, the Trustee faces a logic problem. The bankruptcy court concluded that the entirety of the plan was reasonably necessary for Debtor's support.  By definition, then, if one removes any part from the fund, it is no longer enough. Second, considering the bankruptcy court's entire decision, we are not convinced it would find otherwise.  Littered throughout are indications that the bankruptcy court suspected that, even with the whole plan exempt, Debtor may not have enough to support himself in retirement.

Now, had the bankruptcy court determined that only part of the Plan was reasonably necessary for Debtor's support, then we agree that the bankruptcy court would have needed to separately parse the Plan's assets.  Likewise, if we determine that the bankruptcy court clearly erred in finding that the entire Plan was reasonably necessary for Debtor's support because only some lesser amount is reasonably necessary, then we would need to consider the Plan assets individually.  But the bankruptcy court did not so determine; nor do we.

**3.    The bankruptcy court did not clearly err in finding that the Plan was reasonably necessary for Debtor's support.**

The bankruptcy court framed the issue as: "Thus, assuming the debtor does not need to take hardship distributions from the Plan in the next nine years (and the evidence suggests he may need to), the court will need to consider whether $409,383 in assets is reasonably necessary for 18 years of retirement."

11

Mem. Dec. at 8.[6]  After weighing the various factors and considering Debtor's petition and declarations, the bankruptcy court concluded:

> In short, given the debtor's age, his likely life expectancy, his meager income at this time and likely for the rest of his working life, the relatively modest amount he may expect from social security in retirement, the very basic level of his living expenses, and the fact that he has little, if any, assurance of being able to meet those expenses while he is still working, let alone after retirement, the court readily concludes the Plan is reasonably necessary for the debtor's support . . . .

Id. at 13.

On appeal, the Trustee contends that Debtor failed to meet his burden of proof because he did not provide enough evidence to show that the Plan was reasonably necessary for his support. Accordingly he contends that the bankruptcy court clearly erred because it lacked sufficient evidence. We disagree. Everyone agrees that Debtor had the burden of proof. Diaz v. Kosmala (In re Diaz), 547 B.R. 329, 336-37 (9th Cir. BAP 2016). And Debtor submitted a declaration about his needs. The Trustee submitted no counter-evidence of his own; instead, he relies on the burden of proof and repeatedly argues that Debtor's declaration provided nothing but speculation, which he asserts is not admissible evidence. But he appears to fundamentally

---

[6] To reach the "18 years" number, the bankruptcy court took judicial notice of Social Security Administration calculator. In his reply, the Trustee faults the court for "going outside the record to find an online document . . . ." Appellant's Reply Br. at 19. But, having failed to raise that issue in his opening brief, the Trustee waived the point. Kaass Law v. Wells Fargo Bank, N.A., 799 F.3d 1290, 1293 (9th Cir. 2015).

12

misunderstand the nature of the proceedings below: the bankruptcy court received evidence and found facts. The Trustee could have put on evidence; he could have cross-examined Debtor. But he did not do so.

The Trustee argues that because Debtor's income is sufficient to meet his current needs without drawing from the Plan, the Plan is not reasonably necessary for his support. The Trustee asserts that this analysis holds true even when Debtor retires because Debtor's anticipated social security income ($2,200 per month) would substitute for his present income ($2,130 per month).

But the Trustee's argument suffers a major flaw. He acknowledges that Debtor's Schedule I income includes Debtor's girlfriend's contributions ($1,800). The bankruptcy court, however, did not include those contributions in its analysis: "Although the debtor presently receives contributions from his girlfriend, she is under no legal obligation to continue making them. For purposes of this analysis, the court declines to assume she or anyone else will be willing and able to contribute to the debtor's household income once he retires." Mem. Dec. at 12. The Trustee faults the bankruptcy court for this: "The Debtor's statements concerning his girlfriend's contributions to their mutual living expenses are nothing more than speculation about what might happen in the future." Appellant's Opening Br. at 27. He continues: "Based on the admissible evidence before the court, it is as likely that the status quo will continue as that it will change." Id. But we review the bankruptcy court's factual finding for clear error, and "[w]here there are two

13

permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). As a result, the Trustee's argument overestimates Debtor's anticipated income by $1,800 per month.

The Trustee, perhaps, misunderstands the standard of review. In his reply brief, the Trustee asserts: "The bankruptcy court made assumptions and **inferences** as to each of these items [i.e., Debtor's projected expenses in ten years, the value of Debtor's Plan's assets in ten years, Debtor's likely medical expenses in ten years, or Debtor's life expectancy] (**mostly extrapolating from Debtor's present situation**), but they were not based on evidence presented by Debtor concerning his anticipated income and expenses." Appellant's Reply Br. at 19 (emphasis added). A bankruptcy court does not clearly err when it makes findings that are supported by inferences in the record. See Hinkson, 585 F.3d at 1262.

The Trustee never separately argues that, even if the bankruptcy court is correct about Debtor's income and expenses, its determination that $409,383 in assets is reasonably necessary for 18 years of retirement was an error. But we briefly consider the numbers. We take the $409,383 total, divide it by 216 months of retirement, and reach about $1,895 per month. Given Debtor's anticipated $2,200 per month in social security income, Debtor's anticipated monthly income when he retires would then be $4,095; Debtor's present monthly expenses are $3,315; that results in $780 in positive monthly income. Of course, the bankruptcy court also determined: first,

14

that the Plan's value will not grow significantly in the next 10 years; second, that Debtor likely will need to use the assets before he retires (depleting the amount); and third, that Debtor's expenses in retirement will likely increase. Given these substantial uncertainties, we conclude that the bankruptcy court did not clearly err in finding that $409,383 is reasonably necessary for Debtor's retirement.

The Trustee also asserts that the $315 monthly shortfall between Debtor's Schedule I and J is illusory because Debtor did not include in Schedule I the $2,000 quarterly repayments on the Plan's loan, which Debtor was depositing into his personal account and not returning to the Plan. The bankruptcy court, however, concluded that Debtor's interest in the quarterly payments ($333 per month, after accounting for Debtor's ex-spouse's interest) was "not sufficient to alter the court's conclusion as to the reasonably necessary test." Mem. Dec. at 9-10 n.4. This was not clear error.

Further, these circumstances undercut the Trustee's general point. He argues that the Plan is not reasonably necessary for Debtor's support because Debtor's presents needs are met. But, to meet his needs, Debtor decided to take hardship distributions from the Plan and suffer the corresponding tax penalties. Debtor is thus effectively already using the Plan; he may continue to need it in the future. See Mem. Dec. at 8-9 ("Thus, assuming the debtor does not need to take hardship distributions from the Plan in the next nine years (and the evidence suggests he may need to), the court will need to consider . . . ."); id. at 13 ("Without [the $1,800 monthly contribution from his

15

girlfriend], the debtor would need to deplete the Plan assets significantly even before he retires.").

In short, the bankruptcy court looked at Debtor's age, life expectancy, present and anticipated income and expenses, assets, future employment prospects, and other things; it relied on Debtor's testimony and Debtor's schedules, which were submitted under penalty of perjury. The Trustee believes that this was clear error because Debtor's testimony was inadmissible as offering only speculation. We disagree. Having reviewed the record, we are not left with the firm conviction that the bankruptcy court made a mistake. See Hinkson, 585 F.3d at 1262.

**B.     We need not reach the § 522(b)(3)(C) exemption.**

The bankruptcy court also determined that the Property was properly exempt under § 522(b)(3)(C) because it fell within the purview of the phrase "retirement funds." On appeal, the parties devote substantial briefing to this point. But, as the Trustee acknowledges, to prevail in this appeal he has to show that the bankruptcy court erred in relation to both exemptions. Having concluded that the Property is exempt under CCP § 703.140(b)(10)(E), we need not decide the § 522(b)(3)(C) matter.

**CONCLUSION**

Based on the foregoing, we AFFIRM.

16